## OTTO APITZ v. CITY OF NEW ULM.[1]

June 2, 1933.

No. 29,404.

*Albert Pfaender,* City Attorney, for appellant.
*Streissguth & Fordyce,* for respondent.

*WILSON, Chief Justice.*

Defendant appealed from an order denying its motion for a new trial.

Plaintiff owned a filling station in the city of New Ulm. It was located on a corner lot about 50 feet wide and 100 feet long, facing on Front street. Trunk highway No. 7 came from the east, passed

[1] Reported in 248 N. W. 733.

along the side of plaintiff's lot, and turned to the left on Front street, passing in front of his place.

The city established a street grade on Front street in 1890. It seems to be conceded that the grade at a point in the center of this street intersection was originally given an elevation of 112. It is also a recognized fact that Front street was improved according to an engineer's plan and that the improvement was based upon said elevation. As a part of such improvement the street was then graded, graveled, a boulevard made, and a gravel sidewalk placed on plaintiff's property, then owned by his grantor. There was then no curb or gutter. In 1926 plaintiff's filling station and driveways were built on a so-called practical grade in substantial conformity to the street improvement theretofore made.

In 1931 the state highway department rerouted trunk highway No. 7 along the route above mentioned, decided to and did pave a 20-foot strip thereon. The city paved the balance of the street and put in curb and gutter. This improvement was completed in the fall of 1931, and as an incident thereto the surface of the paving at the point above mentioned, which had previously been given an elevation of 112, was lowered between three and four inches. The change in elevation and other changes adjacent to the property line and where the curb and gutter were constructed were made to meet traffic and drainage conditions. Among these structural changes the grade along the curb line of plaintiff's property on Front street was lowered from about 10 inches at a point opposite the center of plaintiff's driveway to about 18 or 20 inches at the corner of his property. Likewise, on the other side thereof, the so-called trunk highway side, the grade was cut from 15 to 18 inches. The improvement widened the street; and the curb and gutter, which were new to plaintiff's property, brought the recognized edge of the streets back toward plaintiff's property and within a few feet of one of his pumps, resulting in the driveways' being shorter and steeper. Plaintiff constructed new concrete driveways into the street in an effort to get a satisfactory grade or approach therefrom. The authorities required him to remove them, since they encroached upon the

shoulder of the highway. He then constructed driveways to conform to the new street and highway grades, but the slope was too steep for practical purposes, and the large trucks passed in and out with difficulty. The fact that these driveways entered and left plaintiff's property at an angle added to the trouble for heavy trucks loaded with livestock. This resulted in the drivers of such trucks patronizing others who had more satisfactory approaches.

Plaintiff then tore out his new concrete driveways and lowered his entire filling station, installing new driveways. This changed his cellar from about six feet to four and a half feet in depth, and reduced the depth of his pit used for draining automobiles from four and a half feet to about three feet. In these changes plaintiff expended $890.62.

This action was brought to recover damages in the sum of $2,500. The court awarded plaintiff $900.

■ The court found that in the making of said improvement in 1931 by the city and the state of Minnesota there was a substantial departure from established grades in conformity with which plaintiff's station had been constructed which resulted in a material damage to plaintiff's property. It was found that plaintiff first tried in good faith to meet the situation by leaving his oil station at its old elevation and building approaches from the station to the level of the new pavement; and, finding it impractical for vehicular traffic conveniently and safely to use the new approaches, plaintiff made the change at the expense above stated. It was also found that this change was made necessary by the improvement. We are of the opinion that the evidence is sufficient to support the findings of fact, which justify the conclusion of law. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6650; Maguire v. Village of Crosby, 178 Minn. 144, 226 N. W. 398; Foss v. City of Montevideo, 178 Minn. 430, 227 N. W. 357.

■ The defendant assigns as error the reception of the testimony of witness Kolb, who gave his opinion as to values. The claim is that there was no proper foundation established to qualify him as an expert.

The witness testified that he was in the real estate business in New Ulm and that such business and insurance were his principal occupation. He testified that he was familiar with plaintiff's property and that he had heard a part of the testimony offered by the plaintiff in the case. His business and acquaintance made a prima facie case for the reception of his testimony. Lehmicke v. St. P. S. & T. F. R. Co. 19 Minn. 406 (464) ; Papooshek v. W. & St. P. R. Co. 44 Minn. 195, 46 N. W. 329.

Whether a witness offered as an expert possesses the requisite qualifications is a question of fact to be tested by the trial court, and its determination will not be reversed by us unless it clearly appears unjustified by the evidence or based upon an erroneous view of the law. Perhaps the specific point upon which the defendant attacks the testimony of this witness is that he disclosed that he did not know in inches the extent of the change in elevation at different points about plaintiff's property resulting from the new improvement. The witness testified that he was in a measure basing his judgment from eyesight observations without knowledge as to any particular elevation. The attack was made upon the theory that such a witness must necessarily have definite knowledge as to the exact depth of the cut made because of the change in grade. The witness testified that he could not say what the cut was but that the only thing he could remember was the condition of the filling station and the road before and after the improvement was completed. His testimony was based on certain assumed facts, these depending upon the testimony of other witnesses.

Much flexibility must exist in the rules to be applied by the trial court in receiving testimony of expert witnesses. To adopt such a technical rule as urged by the defendant would result in hardship and extended litigation. It is better that questions of this character rest in the discretion of the trial court.

This expert witness was called because of his knowledge of values. He applied that knowledge to plaintiff's property and the value as affected by the change of the grade. Values are not determined to a mathematical certainty; and so whether or not this witness

knew the depth of the cut in the grade within an inch or so is not of controlling importance. As an expert witness Kolb was required to have experiential capacity, knowledge of the standards of value, and knowledge of the object to be valued. The test of the competency of an expert witness is a living one. Its individuality must be met as it appears in other cases. Perhaps the essential that he have knowledge of the object to be valued is the one here under attack. There can be no rule of law defining how much a witness must know of property before his opinion as to its value will be heard. He must be sufficiently acquainted with it to form some estimate as to its value, and then it is for the trier of fact to determine how much weight to attach to such estimate. The sufficiency of the witness's acquaintance with the property to be valued must depend upon the discretion of the trial court. In this case the expert could not well know the exact changes in the grades and was necessarily largely confined to giving his opinion based upon what he could see or based upon data embraced in the questions as assumed facts. In such case the trial judge must have considerable latitude, and we do not find anything to indicate an abuse of discretion in this case. The record in this case falls short of establishing any error resulting from the court's receiving the testimony of this witness.

Affirmed.