### John D. Farr et al v. State Highway Board

[166 A.2d 187]

November Term, 1960

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed November 29, 1960

*Finn & Davis* for the plaintiffs.

*John D. Paterson* for the defendant.

**Hulburd, C. J.** At the trial below, the jury awarded the plaintiffs $24,000.00 for land taken in highway condemnation proceedings. The defendant comes here on appeal questioning whether the trial court properly admitted testimony from three expert witnesses for the plaintiff. They gave valuation testimony concerning the real estate in question. The defendant-appellant claims they were not qualified to do so. The complaint is not that the witnesses were unqualified by virtue of training and experience to testify; rather, the defendant's objection is that the witnesses' familiarity with the property itself was not such as to justify the trial court's action in receiving in evidence their opinions on the value of the land in controversy.

The condemnation involved a taking of a strip of land through the plaintiffs' dairy farm. Before the trial began, the jury was given a view of the premises. The farm, before the taking by the State, consisted of approximately 470 acres and was located both north and south of U. S. Route 2. Of this total acreage, about 96 acres were classified as meadow, and the remainder as pasture and woodland. The principal buildings on the property were a farmhouse, a large barn with tie-ups for 92 head of cattle and 4 pen spaces and 2 silos and a tenement house, all of which were located on the northerly side of U. S. Route 2 and in addition there was another house and barn located on the southerly side of U. S. Route 2. The taking by the State consisted of approximately 45½ acres of which approximately 22 acres were classified as pasture and 10 acres as meadow, and 13½ acres woodland. The 86 acres of meadow remaining after the taking consisted of a 70-acre meadow lying southerly of U. S. Route 2 and between that road and the Winooski River and 16 acres northerly of the road and between that road and the proposed new interstate highway. The taking included a small tenement house which was located considerably northerly of the farmhouse. The effect of the taking was to sever all of the pasture from the dairy barn. It also interfered with access to the barn from the north.

For several years prior to the State's taking, the Farrs used the farm for dairying purposes and carried up to ninety head of cattle by the use of the home farm and several other parcels of land owned by others which they either rented or obtained the use of without payment of rent. It was claimed that as the result of the taking the

number of head which the farm would carry would be reduced from ninety head to forty-five and that this would be on the basis of a non-pasture operation. The evidence disclosed that, for the three year period prior to the taking, the plaintiffs received amounts varying between $30,000 and $37,000 for milk. This production was achieved by the aid derived from the use of the additional land mentioned. As to what this amounted to in dollars, there was no testimony before the jury, but there was testimony that "It never made much difference." There was other evidence as to the nature and extent of the contribution from which a judgment could be formed in this regard. The plaintiffs' witnesses were present in court and had the benefit of this testimony in connection with their own.

In the course of the trial, each of these witnesses was asked to give his opinion of the value of the Farr property before and after the taking by the State. The State objected in each instance on the ground that each witness had not shown himself qualified "as to seeing the land he testified about."

Take the first of these witnesses, Mr. Nichols. He was a realtor who had been engaged in selling real estate since 1937. He had visited the Farr farm on two occasions, one of them being the day before he testified. He stated that he had examined the buildings and the meadow, that he did not go over the pasture or the woodland, and that he had not seen them other than what he saw from the buildings and the road. He was familiar with the distribution of the acreage into land, meadow and pasture. Based on this, his knowledge of the milk production of the farm and his knowledge of sale prices of lands in the area, he stated that he had a "general opinion" as to the value of the Farr farm. The State objected to this opinion being given, pointing out the respects in which the witness' knowledge of the property was limited. To this the trial court stated, "The jury will have all these things in mind, Mr. Patterson. The objection is overruled."

The next of the witnesses was a Mr. Rogers. He testified he was a farmer, a farm consultant, and assistant cashier for the Peoples National Bank of Barre; that in connection with his work for the bank, he made appraisals of farms and spent about half his time "in the field." He went on to testify that about two weeks before the hearing he went to the Farr farm for the purpose of making an appraisal.

While there he inspected the buildings, looked over the land, but did not go on the wood lot, although Mr. Farr gave him some information about that and its second growth nature. He also gave him figures relating to the farm's milk production. It was Mr. Rogers' opinion that the taking by the State would reduce its capacity from a ninety cow farm to a forty-five cow farm and that this would, in turn, not only cut the gross income from the farm by half, but would cut the net income by more than that since Mr. Farr would be left with an over-sized "set-up" for efficient farm management. Having testified to all of the foregoing without objection—and properly so—Mr. Rogers was then asked to state his opinion, first, as to the value of the farm before the taking, and, then, as to the value of the farm after the taking. Over the State's objection, he did both. Fifty thousand dollars was his valuation before the taking, twenty-five thousand dollars after the taking. The State's objection was the same as in the case of Mr. Nichols: "This witness hasn't shown himself to be qualified—as to seeing the land he testified about."

The last of the three witnesses in question was a Mrs. Ford. She, too, had been engaged in the sale of real estate for about twenty years and was familiar with the general demand for farm properties. She stated that she went to the Farrs' farm at the request of their attorney and looked the buildings over. She went into the barn and other buildings except the tenement house which "* * * the highway is taking, and I looked up the insurance on that." She looked the land over generally "from what you could observe from the highway and back of the buildings," but she did not "tramp around in the woods." As in the case of the other witnesses, she stated that her observation was supplemented by inquiries by her of Mr. Farr concerning the operation of the farm. This witness, like the others, was allowed to give her opinion, over the State's objection as before, concerning the value of the Farr farm. She placed a $50,000 valuation on the farm before the taking and went on to say that after the taking the farm would be worth about 50% less.

We have not sought to pass separately upon the ruling of the court below as to the admission of the testimony of each of the three witnesses, since we are convinced that a common disposition can be properly made as to all. It is apparent that the State's position in each instance derives from this Court's holding in *Leblanc* v. *Des-*

*landes,* 117 Vt. 248, 253, 90 A.2d 802. This was an action for fraud in the sale of a farm. Among other things, the alleged false representations included statements as to the amount of tillage land, the amount of timber and wood, the condition of the sugar bush, and number of sap buckets that could be hung. It was held error to allow a witness to state his opinion of the value of the farm since his lack of knowledge concerned the very factors in issue. They were vital to the value of the farm in the light of the alleged false representations. The witness, it appeared, was not shown the boundaries or how far they went; he hadn't seen the woodland or gone into the pasture or sugar lot; nor had he seen other things in controversy. The State argues that if the witness should not have been allowed to testify there, similar testimony was equally improper here.

With this we cannot agree. In our present case, the woodland, instead of being a central factor, was off on the periphery of the controversy. Nobody claimed it would be affected one way or another. The trial court was justified in finding that the witnesses had a sufficient familiarity with the farm in question, concerning the things which mattered, so as to form an intelligent judgment as to value, beyond that possessed by men in general. *Labounty* v. *Lafleur,* 113 Vt. 226, 227, 32 A.2d 124, 125. "The competency of the witness was a preliminary question for the trial court, and its decision is conclusive unless it appears from the evidence to have been erroneous, or was founded on an error of law." *Teitle* v. *The London & Lancashire Insurance Co. Ltd.,* 116 Vt. 228, 230, 73 A.2d 300. It is quite true, as Nichols has stated in his work, Eminent Domain, Vol. 5 at page 165, that a witness "must be familiar with the property itself, or at least have examined it at or about the time of taking." It is equally true that "the exact degree of familiarity is a question for the court in each case." Orgel, Valuation Under Eminent Domain, Vol. 1 at p. 569. See also, *Lamoille Valley R. R. Co.* v. *Bixby,* 57 Vt. 548, 563; *Apitz* v. *City of New Ulm,* 189 Minn. 205, 248 N.W. 733. It is the difference in issues in the *Leblanc* case, together with the fact that the testimony related to a time some two years prior to examination, which accounts for the result there and justifies a seemingly different determination here.

Perhaps the thing which should be pointed out especially here is that the witness' familiarity with the property in question need not necessarily come from a personal examination of the property alone. It may be supplemented. "Under our cases testimony as to value is not rendered inadmissible because it is based, in part, on information received from others." *Teitle* v. *London & Lancashire Insurance Company Ltd., supra,* at page 233. See also note and annotation following a case in 159 A.L.R. 1. In the following cases, a witness was allowed to state his opinion as to value, although he had made a personal examination of only a part of the property evaluated. *Vallejo & N. R. Co.* v. *Home Savings Bank,* 24 Cal. App. 166, 140 P. 974; *Chicago I. & L. R. Co.* v. *Brown,* 157 Ind. 544, 60 N.E. 346; *James Millar Co.* v. *Comm.,* 251 Mass. 457, 146 N.E. 677. In special circumstances, a witness who had never seen the property at all was held to have been properly allowed to give his opinion as to the value of certain property. See *Muskeget Island Club* v. *Nantucket,* 185 Mass. 303, 70 N.E. 61. The foregoing cases are all in harmony with the doctrine of our cases. As was stated in *Labounty* v. *Lafleur,* 113 Vt. 226, 32 A.2d 124, "Value is at best largely a matter of opinion, and from the necessities of the case much liberality is indulged in in the admission of opinion evidence." Language to the same effect may be found in *Purington* v. *Newton,* 114 Vt. 490, 493, 49 A.2d 98. The latitude allowed the trial court in passing on opinion evidence is nowhere greater than that pertaining to the market value of property being acquired in condemnation proceedings. See Orgel, *supra.*

In view of what we have said, it should be apparent that the State's objection to the testimony of the three witnesses, on the ground that they hadn't seen the land they were testifying about, is unavailing. The State, however, makes a further attack on this testimony. It is in connection with the milk production figures. These, it urges, reflected a production arising not from the Farr farm alone, but with additional land used in connection with it. Thus, the State contends, the evidence on this factor could only cause the witnesses to infer a greater productivity to the Farr farm than existed; hence, their opinions would be ill-founded. The witnesses, however, were under no illusion in that regard; neither was the jury. The witnesses were present throughout the trial. They heard the evidence as to

the nature and extent of the contribution of the non-farm lands. It was called to their attention. We are not prepared to say that either the witnesses or the jury were misled by the situation. If this conclusion were in need of further re-enforcement—which we doubt—we think some consideration can be given to 12 V.S.A. §1643 which provides that an expert witness may state his opinion based on his own observation or on evidence introduced at the trial seen or heard by the witness. The opinions of the witnesses here cannot be said to have been based on speculation as in *Bliss* v. *Moore,* 112 Vt. 185, 190, 22 A.2d 315, but resulted from a combination of what they learned from personal examination and from the information gained at the trial.

We are satisfied that the trial court properly received the opinion evidence as to value and that its use by the jury was proper. In submitting the case to the jury, the trial court made it clear in its instructions that "when a witness gives an opinion as to market value of property, it is pertinent to ascertain the extent of his investigation * * *." To have excluded the evidence objected to would have deprived the jury of substantial help in determining the inquiry before them.

*Judgment affirmed.*