## Leonard J. Abbadessa v. Andrew Tegu et al

[187 A.2d 56]

September Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 7, 1962

Reargument Denied November 28, 1962

*Richardson & Caldbeck* and *Richard E. Davis* for the plaintiff.

*Lee E. Emerson* for the defendants.

**Hulburd, C. J.** Following the remand of this case, reported in 122 Vt. 345, 173 A.2d 581, it was re-tried in county court by jury. The plaintiff had a verdict in the amount of $3,600.00, and judgment, including interest, in the sum of $4,634.37. He is here on appeal, claiming that as a matter of law he is entitled to a larger sum, namely, the rent, under a lease, of $400 a month from September 1, 1956 to January 1, 1959 with interest from the date of each item. Moreover, the plaintiff claims that even if he is not entitled to the larger amount as stated, the size of his verdict was adversely affected by the trial court's erroneous ruling with respect to his competency to testify on one phase of the case.

The rent involved here was for a moving picture theatre which the plaintiff had leased to the defendant together with a moving picture projector and certain other related equipment. During the term, the defendants abandoned the premises. The plaintiff claims that he never accepted the defendant's surrender of the premises and so he seeks to hold the defendant to his lease-contract. This the defendant denies. Moreover, he says that whatever he owes for rent should be subject to a reduction because the plaintiff removed the projector and related equipment from the theatre after its abandonment and sold it, subject to a right of repurchase, for the sum of $1,700. In *Abbadessa* v. *Tegu*, 122 Vt. 345, 348, 173 A.2d 581, we held that the defendant was entitled to a credit for the loss of use of the equipment during the remainder of the term. So, on the re-trial below, the amount of credit to be allowed the defendant for the loss of use of the equipment was one of the matters in issue. In an attempt to show the amount of this loss, the attorney for the plaintiff sought to put in evidence the opinion of the plaintiff as to its value in this respect. The trial court ruled that it had not been shown that the plaintiff was qualified to testify on this subject and that 12 V.S.A. §1604 did not render the plaintiff competent to testify as to "use-value."

Since the witness testified at one point that he was not familiar with the rental value of such property, there is no basis for questioning the discretion of the trial court on the preliminary matter of qualifications. Beyond this, moreover, we are not persuaded that the trial court was in error in holding that because 12 V.S.A. §1604 provides that "The owner of real or personal property shall be a cómpetent witness to testify as to the value thereof," its language can be said to convey an intention on the part of the legislature to render an owner competent to testify as to the rental value of property as well. This, it seems to us, would be an unwarranted extension of the language of the act. Owners ordinarily acquire property by purchase; so they have some judgment of value based on cost. Rental value involves an entirely different field and we think if the legislature had intended to include it they would have said so. The knowledge of this very witness, according to his own testimony, tends to illustrate that familiarity with the rental value of a chattel is not co-extensive in the familiarity with its value as a piece of property. No error appears in connection with the court's ruling in regard to this evidence.

The plaintiff's second claim of error is to the trial court's refusal to direct a verdict in his favor in the sum of $11,200 with interest on each item of rent from the due date thereof from September 1, 1956 through December 1958. This motion assumed that, as a matter of law, the plaintiff was entitled to the specific verdict claimed.

It is at once apparent that the plaintiff would not be entitled to have such a motion granted if the defendant was given any credit at all for the moving picture equipment. We made it plain in this case in 122 Vt. 345, 348, *supra,* that the defendant was to be allowed a credit on this account. The mere fact that the plaintiff was willing to agree that he would pay $1,700 for the re-purchase of the moving picture equipment was a sufficient evidentiary basis to justify the jury in giving the defendant at least a nominal credit for his loss of use of this property. For this reason alone, the plaintiff's motion for a directed verdict in the amount claimed was properly denied.

There was more in the record, however, than what we have stated heretofore bearing on the question of the proper credit for the equipment. The defendant, a man who has had extensive experience in the motion picture business, testified that the loss of use of the equipment, on a monthly basis, "would be about $400, the cost of the rent." It was the defendant's contention that the building without the equipment was valueless, or as he said ". . . it was useless for operation as a theatre after the equipment had been sold out." This evidence came into the record without objection on the part of the plaintiff. It provided a further reason why the plaintiff was not entitled to have a directed verdict for the specific amount claimed. For the court to have granted it would have been to have completely ignored the matter of credit for the equipment sold.

If the plaintiff took the position that the defendant was not entitled to treat the personal property and the real estate as one item, he should have objected to the defendant's evidence or got it stricken from the case and then briefed the question of "use-value" as affected by the indivisibility of personal and real property. This was not done. The problem was never met head-on. Following cross-examination of the defendant, the plaintiff did move to strike from the record all of the defendant's testimony as to the "use-value" of the equipment. The trial court responded, "We had better pursue this matter further before we make our ruling." The trial progressed through to its end.

The jury were instructed that the two types of property, personal and real, may become so merged that they become indivisible, and, said the court, "If they become indivisible so that one depends upon the other, at that point the disposition of one would, of course, leave the other of no value." To this instruction, the plaintiff took no exception. After the jury had returned a verdict and had been discharged, the plaintiff then stated, "May I call attention to the fact that I have a motion to exclude from consideration the testimony of Andrew Tegu about the fair rental value of the machinery being $400 a month. . ." Such a statement is an acknowledgment that no definite ruling on the point had been made up to that time.

■ Obviously it was too late to take action on a motion to strike from the consideration of the jury evidence upon which they already had acted and upon which they had previously rendered a verdict. It was the plaintiff's responsibility to see to it that his motion was ruled upon in a timely and definite manner, if later developments indicated to him that his motion still had validity. Compare, *Scott, Admr.* v. *Bradford National Bank,* 107 Vt. 226, 231, 179 Atl. 149.

■ The plaintiff should have been spurred into action when the trial court instructed the jury as it did, if it did not wish what the court was instructing the jury to become the law of the case. *Shields* v. *Vermont Mutual Fire Ins. Co.,* 102 Vt. 224, 254, 147 Atl. 352. In the same manner, and for the same sort of reasons, the testimony, as we have recited it, has now become, in effect, the evidence of the case. Failure of the plaintiff to press his motion to strike in a definite and timely manner leaves the record for our consideration the same as it was at the time the plaintiff moved for a directed verdict. Viewed in this light, it furnished an added reason why there was no error by the court below in denying the plaintiff's motion for a directed verdict in the specific amount stated.

■ The plaintiff also moved for judgment notwithstanding the verdict in the amount of $11,200. This motion was denied. Such a motion did not present a different question than that involved in the motion for a directed verdict. If the plaintiff wished to invoke the trial court's discretion, he could not do so by a motion for judgment notwithstanding the verdict. *Sawyer* v. *Ewen,* 122 Vt. 320, 322, 173 A.2d 549. What we have said in connection with the motion for a

directed verdict disposes of this question. There was no error in denying the motion for judgment notwithstanding the verdict.

*Judgment affirmed.*