### Fred C. Fiske et al v. State Highway Board

[197 A.2d 790]

December Term, 1963

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed February 3, 1964

Reargument Denied February 27, 1964

88

*A. Pearley Feen* for the plaintiffs.

*Joseph E. Frank* for the defendant.

**Holden, C. J.** On March 27, 1961 the Vermont State Highway Board condemned a portion of the land and buildings owned by the plaintiffs. The property was situated on both sides of the highway known as Williston Road in South Burlington. All of the premises on the north side of the highway, consisted of eight-tenths of an acre, with a ranch-type dwelling were taken. On the south side of the highway, one and one-tenth acres with two dwelling houses and three tourist cabins were condemned. The property remaining in the plaintiffs consisted of three and one-half acres, a dwelling house occupied by the plaintiffs as their residence, and five tourist cabins. As originally constituted the south parcel had a frontage on Williston Road of approximately four hundred feet. After the taking, access to the remaining land from Williston Road was by way of a frontage

of fifty-three feet at the western end of the land retained. The purpose of the appropriation was to establish a cloverleaf interchange.

The highway board awarded the plaintiffs $78,000 as compensation for the land and buildings taken. The plaintiffs appealed to the Chittenden County Court pursuant to the provisions of 19 V.S.A. §231. After trial by jury a general verdict of $70,500 was returned. The composition of this amount was specified by two special verdicts. One was in the amount of $60,265, representing the value of the lands and buildings taken by the state. The second was for $10,235, being the amount fixed as damage to the land and buildings retained.

The plaintiffs appeal from the judgment that followed. Error is assigned to the court's exclusion of evidence offered by the plaintiffs as to the amount of business loss sustained in the condemnation, and to its refusal to submit the issue of business loss to the jury.

The record indicates that the plaintiff Fred Fiske had operated a tourist business at this location from May 30 to November 1 each year since 1930. Starting with a single cabin, the facilities were expanded from time to time until the highway project was commenced. Then the operation consisted of six single units and two double cabins. In 1958 the business produced gross receipts of $2,416.00 and net profit of $745.00. In 1959, gross income was $4,069.50 with net income of $1,498.61. 1960 yielded $3,216.46 gross and $1,315.61 net income.

In this enterprise the plaintiffs attended to the registration and placement of guests and collected the rentals. Outside help was employed to do the other work involved. In computing the net profits, no deduction was made for the services performed by the plaintiffs.

In addition to the cabin business, Fred Fiske had engaged in appraising real estate. He had extensive experience in appraisal of farm properties and limited activity in commercial properties.

The plaintiff contended that the severe restriction in the frontage of the south parcel on Williston Road and the circuitous access to the cabin development occasioned by the highway condemnation destroyed the utility of the property as a cabin operation. They maintained that this curtailment required them to abandon the business and to sell and remove the remaining cabins from the premises, at considerable loss.

On this state of the evidence, the plaintiff was asked the following:

Q. Based upon your experience in this business over a period of years, what do you say as to whether the elimination of the business resulted in a money loss to you—Yes or No?

A. It certainly did. I lost income.

Q. Here again Yes or No—Do you have any opinion as to the value of that loss, the amount of it?

A. Yes.

Q. And what do you say . . . as to the value of the loss of business upon the property which was taken?

Here the defendant objected to the question. Counsel for the plaintiffs then stated an offer to the effect that the factual situation in this case entitled the landowners to compensation for loss of business under 19 V.S.A. §221(2), and that in the opinion of the plaintiff, the business had a value of $20,000. The defendant interposed further objection that the plaintiffs' claim of business loss was predicated on capitalization of income. From the tenor of the remarks of the presiding judge in excluding this offer, it is clear that he considered the plaintiffs' estimate was based on capitalization of income as suggested in the objection. The court further added, "I think, under the present state of the evidence, to allow the witness to express his opinion at this time would be to go into the realm of conjecture on the part of the witness and such an opinion wouldn't have any foundation . . ."

In response to inquiry by the court, counsel for the plaintiffs stated that their claim of business loss was not based exclusively on capitalization of income, although the income produced by the enterprise was a factor in arriving at his estimate of the value. Further inquiry on loss of business was excluded except for cross-examination of the witness by counsel for the highway board. From this it appeared that the vacancy rate experienced by the plaintiffs' business in 1958 was in excess of 75 percent, 50 percent in 1959, and 60 percent in 1960. The defendant also sought to develop the point that the cabin business might increase in value as a result of its favorable location in relation to the new interchange.

By the enactment of 19 V.S.A. §221(2) in 1957, the legislature has decreed that a landowner, whose property contains a going business, shall be compensated, not only for the land taken, but he shall be entitled to a further award to the extent of "the direct and proxi-

mate lessening in the value of the remaining property or right therein and the business thereon." Perhaps, as Justice Holmes pointed out in *Earle* v. *Commonwealth,* 180 Mass. 579, 584, 63 N.E. 10, 57 L.R.A. 292, there is no constitutional necessity for monetary recognition of such an indirect loss. "But some latitude is allowed the legislature. It is not forbidden to be just in some cases where it is not required to be by the letter of the law."

▇ In enlarging the scope of compensation to this extent, undoubtedly the lawmakers were mindful of the lack of certainty in measuring business loss and the difficulty in calculating the true effect of the taking on a going business. Nevertheless, the statute requires the highway board, in the first instance, and the county court, on appeal, to search out to what extent, if any, the business yield has been proximately lessened by the condemnation. To be sure, the economic effect of the highway project is not necessarily adverse. The problem in each case is essentially factual. *Record* v. *State Highway Board,* 121 Vt. 230, 237, 154 A.2d 475; *Penna* v. *State Highway Board,* 122 Vt. 290, 293, 170 A.2d 630.

In the language of Chief Justice Hulburd in the Penna case, the plaintiffs here marshalled their proof by showing a modest profit in the three years preceding the taking. The extent of the landowners' services in gathering the net income was presented so that the jury might properly reduce the computation of profit according to its estimate of the value of proprietor's labor. The profits, thus adjusted, were admissible to help determine the amount of damage inflicted on the cabin business. *Penna* v. *State Highway Board, supra,* 122 Vt. at 200.

▇▇ In searching for the true extent of business loss, the jury was entitled to entertain the opinion of the owner on this issue. A proprietor who is conversant with his business· and its management is competent to testify to the value of the property and the business which was operated there. *O'Brien* v. *State Highway Board,* 123 Vt. 414, 417, 190 A.2d 699. And even if the trial court was correct in its assumption that the estimate would be based in part on capitalization of income, that of itself would not render the offered testimony inadmissible. No exact formula for measuring the business loss is available and the legislature prescribed none. The business operation

had been terminated so that actual experience after the taking was not available. There was nothing in the plaintiffs' offer to indicate they attempted to gear the profits to the life expectancy of the owners, against what was said in the Penna. case, *supra,* 122 Vt. at 294. In these circumstances, recent profits have a relevant bearing in determining business loss. It is a factor important to potential buyers, as well as the seller, in arriving at a proper valuation. The evidence in this regard must be received with caution lest resort to capitalization methods project current experience to such an extended period of time that it overreaches any price that might be set in the present market. *Penna* v. *State Highway Board, supra,* 122 Vt. at 294. The testimony offered in the present case, as applied to a brief but reasonable readjustment period, might well furnish a reliable guide to the issue. *Record* v. *State Highway Board, supra,* 121 Vt. at 240.

By its very nature, the indirect damage sustained by the landowner in his business operations is uncertain. It can be determined only by estimate. Notwithstanding uncertainty, the legislature has ordained that the owner shall be entitled to a recovery of his consequential loss in this respect. *Penna* v. *State Highway Board, supra,* 122 Vt. at 292. The practical difficulty in ascertaining the exact amount does not stand in the way of carrying out the statute. "The money value of the plaintiff's business could be estimated, even though absolutely personal to himself." Holmes, C.J. in *Earle* v. *Commonwealth, supra,* 63 N.E. at 11.

When the trial court excluded the testimony offered by the plaintiffs, it was not concerned with Fiske's qualification. The court specified it rejected the offer for the reason it involved capitalization of profits and reached into the realm of conjecture. These were sound reasons to caution the jury to carefully weigh the probative value of the owner's opinion, but complete exclusion was in error.

Apart from evidence excluded, the fact that the yield of the plaintiffs' business was reduced by removing three of the cabins from the operation was sufficient to require submission of business loss to the jury. In addition, there was evidence that the restriction in frontage on Williston Road rendered the cabins substantially less accessible and unsatisfactory as a commercial operation. The evidence on this point was subject to conflicting inferences, some of which were favorable to the state. Similarly, the question of

whether the cloverleaf itself was a business asset at this location, or a detriment to the plaintiffs, was a question for the jury to weigh and resolve in seeking to find the true extent of the business loss. It was for the jury to say whether the yield was marginal, and to what extent the cabin business was adversely affected. It was error for the trial court to dispose of this issue, as a matter of law, by withholding it from the jury.

The defendant seeks to avoid the error on the contention that the plaintiffs' profit experience for the years 1958 through 1960 fails to make allowance for reasonable rental value of the land occupied by the business and the claim for lost profits was not limited to a period reasonably necessary to reestablish the business. The opinion in the Penna case points out that these considerations may be important in arriving at the correct assessment of business loss. However, no burden of proof as to these matters is imposed on the claimants either by statute or judicial interpretation. We think they are elements that go to the weight of the evidence concerning business and financial yield. They are considerations that should be brought to the attention of the jury by adequate and proper instructions in submitting the issue for evaluation since they compose different aspects of the problem of business loss. That they were not dealt with specifically in the plaintiffs' case does not amount to a failure of proof.

The plaintiffs have claimed no error in the verdicts of the jury on the value of the land and buildings taken. Nor have they complained of the finding of damages to the property remaining after the taking. Land damage and business loss may be the subject of separate and independent evaluation and assessment. *Penna* v. *State Highway Board, supra,* 122 Vt. at 292-293. 12 V.S.A. §1904a requires a special verdict as to each element of damage specified in 19 V.S.A. §221(2). We find no need to remand this case generally, for retrial on all issues. Accordingly, remand will be restricted to the issue of damages resulting from the taking of the plaintiffs' business on the subject property and the direct and proximate lessening in the value of the business remaining.

*Judgment reversed. The General Verdict is vacated. Special Verdicts #1 and #2 are affirmed. Cause remanded for retrial on the limited issue of business loss.*

## On Defendant's Request for Reargument

**Holden, C. J.** The defendant's motion for reargument is directed to the competency of the plaintiff Fred Fiske to testify concerning the value of the business which he conducted on part of the land condemned. The request contends that the opinion, in sustaining the competency of this witness on the value of his business, overlooked our holding in *Abbadessa* v. *Tegu,* 123 Vt. 183, 184, 187 A.2d 56.

In Abbadessa we found no error in the trial court's exclusion of testimony offered by the owner of motion picture equipment concerning its rental value where the witness had stated he was not familiar with the subject. The opinion by Chief Justice Hulburd went on to point out that the propriety of the exclusion was not changed by force of 12 V.S.A. §1604, which provides: "The owner of real or personal property shall be a competent witness to testify to the value thereof." It was indicated that the enactment did not extend to rental value, as distinguished from the value of the property itself.

We found it unnecessary to resort to the statute in the present appeal. However, it should be noted that the enactment adopts the policy long advocated by Professor Wigmore in his treatise on evidence. See 3 Wigmore, Evidence §716 (3rd Ed.) ; also 20 Am. Jur. §892; 32 C.J.S. Evidence §288.

We held, independently of the enactment, that the owner was properly qualified to testify concerning the value of the business located on part of the land that was taken since it appeared that he was entirely acquainted with the nature and extent of the business which he conducted there. Ownership has always been a factor entitled to great weight in favor of competency. Once the proprietor is shown to be familiar with his property and has some understanding of its value, he will be permitted to estimate its worth, leaving the weight to be given his opinion to the jury. *Teitle* v. *London and Lancashire Insurance Co., Ltd.,* 116 Vt. 228, 229, 73 A.2d 300; 3 Wigmore, Evidence §716, p. 48 (3rd Ed.). *O'Brien* v. *State Highway Board,* 123 Vt. 414, 190 A.2d 699, cited in the main opinion, is to the same effect, although the owner's estimate of the value of his property did not extend to the business as a separate entity. If the owner of a business is conversant with its operation and management, he is a competent witness to estimate its value and the extent

to which its worth, as a business, will be invaded by a particular highway condemnation.

*Request for permission to reargue is denied. Let full entry go down.*