## Childrens' Home, Inc.
### v.
## State Highway Board

[211 A. 2d 257]

April Term, 1965

Present: **Holden, C. J., Shangraw, Barney and Smith, J. J., and O'Brien, Supr. J.**

Opinion Filed June 1, 1965

*Albert W. Coffrin* and *Douglas C. Pierson* for plaintiff.

*Joseph E. Frank* for the State.

**Holden, C. J.** In this appeal, the plaintiff landowner, Childrens' Home, Inc., challenges the compensation awarded by the Chittenden County Court in a highway condemnation proceeding. The defendant appropriated a triangular parcel of 9.2 acres, consisting of the plaintiff's remaining frontage of 723 feet on Shelburne Road in Burlington. The land was taken on May 4, 1961 for highway construction. The condemned area was undeveloped. A circuitous stream flowed through the area in the channel of a ravine. The ravine extended to a depth of forty feet below the level of the grade of Shelburne Road.

Directly north and adjacent to the area appropriated, is a tract of land which the plaintiff had conveyed to Antonio Pomerleau on

January 11, 1960 for the purpose of developing a shopping center at a price of $150,000.

The accomplishment of this purpose required the new owner to remove 60,000 yards of excavation from the shopping center area. During Pomerleau's negotiation for an option to purchase the property, he requested permission from the plaintiff to dump the excess fill in the ravine on the remaining land of the plaintiff.

The details of this arrangement were not incorporated in the option, nor in the instrument of conveyance which followed. Nonetheless, the plaintiff contended that the advantage it would derive from this understanding was an inducement to sell and formed part of the consideration for the sale.

In any event, the plaintiff never gained the benefit of the free fill. It was subsequently disposed of by sale from Pomerleau to the State for the highway project.

At the trial, the plaintiff sought to introduce evidence of its conversations with Pomerleau, claiming it had a binding agreement with him concerning the availability of the fill from the shopping center development. The trial court's rejection of this offer presents the first and most important question for review.

It was the plaintiff's theory of compensation that part of the frontage on Shelburne Road could be developed for commercial use. It introduced evidence to support the contention that this segment, when fully improved and developed commercially, would have a value of $99,000. Conceding that this total required adjustment for the cost of developing the area, the plaintiff claimed the advantage of the 60,000 yards of free fill promised by Pomerleau to reduce the adjustment from $43,500 to $18,250.

We find no legal fault in the ruling applied to the plaintiff's offer. The "firm understanding" which the plaintiff tried to bring before the jury was an effort to enhance the value of the land by a project which was contemplated, but never completed. It involved an improvement which was never made. At best, it was an opportunity, peculiar to the plaintiff, of which it never availed itself.

█ Just compensation in this jurisdiction is measured by the market value rule. The landowner is entitled to the value of the parcel appropriated together with the difference in the fair market value of the remaining property immediately before, and immediately after, as a consequence of the taking. 19 V. S. A. § 221 (2) ; *Essex Storage*

*Electric Co.* v. *Victory Lumber Co.*, 93 Vt. 437, 448, 108 Atl. 426; *Demers* v. *City of Montpelier*, 120 Vt. 380, 387, 141 A. 2d 676; *Rome* v. *State Highway Board*, 121 Vt. 253, 255, 138 A. 2d 308.

The present inquiry was confined to the value of the land taken on May 4, 1961. On that date the property taken and the land remaining was unimproved, ungraded with an empty ravine. As such it had a market value which was aided by its commercial potential. But the monetary value of that potential was not subject to further increment by the prospect of low development costs which were never experienced in fact.

Affording the plaintiff the full strength of its offer to the effect that it had a binding agreement with Pomerleau for the excess fill, such an undertaking was collateral to the main issue. The defendant did not appropriate the contract, nor did it take to its own use, and without cost, the free fill which was promised to the plaintiff. If there was a binding agreement between the plaintiff and its grantee as to the fill, that was a matter for settlement between the contracting parties, according to their undertaking.

■ Perhaps the highway project frustrated the plaintiff's plans for future development of the frontage. If so, that was not the appropriation of a compensable interest in the land taken, within the reach of constitutional guaranties. *Omnia Commercial Co.* v. *United States*, 261 U. S. 502, 43 S. Ct. 437, 67 L. Ed 773, 776; Orgel, Valuation Under Eminent Domain §76 (2d Ed.).

On appeal the plaintiff contends its understanding with Pomerleau created more than an advantage. It advocates that an interest in the nature of an easement was composed, with the condemned area the dominant estate and the Pomerleau tract the servient tenement — that the loss of the dominant estate, extinguished rights in the servient tenement for which compensation must be awarded.

This position is at wide variance with statements expressed in the plaintiff's offer at the time of trial. There the undertaking was described as "not for the accommodation for the Children's Home at all, but for the accommodation of Mr. Pomerleau. We have statements of an executives' meeting at the time this option was made, and this was expressed."

Without belaboring the point, it appears from the offer that the plaintiff gave its proposed purchaser a verbal license to dump the excess fill on land remaining in the event the property was sold for a

shopping center development. And this arrangement would be mutually advantageous to both parties to the sale.

■ "One of the distinguishing features of an easement is the absence of all right to participate in the profits of the soil charged with it; and another, that there must be two distinct tenements, the dominant to which the right belongs, and the servient upon which the obligation rests." *Payne* v. *Sheets,* 75 Vt. 335, 345, 55 Atl. 656 (Watson, J.). The plaintiff claims the right to participate in the soil of the property adjacent as the servient estate. The servient tenement has been unaffected and undisturbed by the present condemnation proceedings. As to that land, there has been no taking. Whether the plaintiffs' interest is termed an easement or *profit a prendre* is of no consequence.

In the presentation of its main case, the plaintiff apparently anticipated that the defendant would offer evidence of the sale to Pomerleau at a price of $150 per front foot as a comparable sale to indicate the fair market value of the frontage condemned. Accordingly, the plaintiff inquired of its expert appraiser if he considered the sale comparable. He answered in the negative and gave two reasons; first, that it was out of line with other sales in the area and secondly, that it was subject to numerous restrictions as to its use. The detail of these restrictions were in evidence by way of exhibit. When the witness undertook to elaborate, the defendant objected. The court foreclosed further inquiry as to the details of the restrictions with the comment that it was not interested in the reasons, since the witness testified the sale was not comparable.

Later the plaintiff withdrew its objection to testimony by the defendant's appraiser concerning comparable sales. The witness discounted one sale in the neighborhood because the buyer had acted under some compulsion. The plaintiff undertook to cross examine concerning the witness' knowledge of the circumstances leading up to the Pomerleau transaction. The witness was asked if he knew the plaintiff was in the midst of a building campaign at the time it sold the shopping center property. On objection, the question was excluded. This was followed by an offer which does not appear in the stenographer's record of the proceeding, but an exception was allowed.

Again in rebuttal on the fifth day of the trial, the plaintiff recalled its president to give evidence of an internal conflict between its board of trustees and the executive committee of the board as a factor which influenced the sale of the shopping center property. The purpose was

to detract from the defendant's reference to the property as a comparable sale, and to indicate all the circumstances under which the sale was made. On objection, the evidence was excluded with the observation by the presiding judge that the internal controversies in the plaintiff's governing bodies was not a part of the case, and not proper rebuttal.

The plaintiff assigns error to these rulings as undue restriction of cross examination and rebuttal. It claims their combined effect prejudiced the result and requires a new trial.

Control of the order of proof and the limits of cross examination are of necessity committed to the trial judge who is responsible for the orderly progress of the trial. To be sure, his discretion must be soundly applied, with detached patience, understanding and fairness. Yet the control must be directed toward maintaining the jury's attention on the critical issues that will settle the controversy.

It is of substantial importance that the procedural rulings challenged here arose in connection with facts and circumstances underlying the sale of property adjacent to the land in dispute. The value of neighboring property, similarly situated as indicated by its sale price had relevancy to the market value of the land condemned.

The proof marshalled by both sides involved lengthy presentation of numerous other sales of properties. Five full days of trial were consumed in an effort to find just compensation for the land appropriated. To further prolong the investigation by exploring all of the factors underlying each of the other sales mentioned, to find out why each buyer purchased and why each seller happened to sell at a particular price would have imposed an excessive burden on all concerned. More important, it could have well led to an disproportionate confusion of the issues without making any substantial contribution to the real point of this controversy. *Matter of Thompson,* 127 N. Y. 468, 28 N. E. 389, 390.

■ The problem was essentially one for the trial court's discretion. 2 Wigmore, Evidence § 463 (3d Ed.). Since the rulings are supported by sound and tenable reasons, no error appears.

During the trial, an employee of the defendant, in its right of way division, was called by the plaintiff. When the plaintiff's examination was concluded, he was asked by counsel for the defendant if the payment for land taken for highways was paid by the Vermont state treasurer. Over the plaintiff's objection the witness answered "Yes".

Counsel for the plaintiff immediately countered: "A. You say payments are made from the State Treasury? A-Yes, Sir. Q. And the Federal Government then pays ninety percent of that?" The answer to the last question was excluded on objection.

■ The fact as to which government, state or federal, had to bear the burden of paying the final award in this case had no proper place in the proceedings. The question first advanced by the defendant should have been excluded. It had no relevancy and tended to obscure the issue of just compensation by introducing the extraneous matter concerning the source of the funds.

The trial court should have struck down both questions and instructed the jury to disregard them. Since this was not done, the question remains: Does one inadmissibility justify further improper evidence to negative and explain the first?

■ On this the authorities are divided, but our Court has held "that where one party gives evidence of a collateral fact, it is permissible for his adversary to meet it by giving evidence of another collateral fact that tends to weaken or overcome the impression made on the minds of the jury by the first". *Andrews v. Watkins Estate*, 104 Vt. 321, 328, 160 Atl. 176. See also, Wigmore, Evidence § 15 (3d Ed.). Since the second question was asked on cross examination, we think it should have been allowed.

Was the exclusion of such substance that it confers upon the plaintiff a right to a new trial? To say that the ruling prejudiced the award, we would have to presume that the jury was improperly influenced by the rebutted fact that payment for the award would come from the state treasury. The State is the real party in interest and its highway board is the named defendant. Ordinarily, a jury would be aware of the fact that if the State takes private property for public use, it is legally obligated to justly compensate the owner. This is the plain inference from the presence of the State as a party defendant to the compensation proceeding.

To be sure, it was wrong for the defendant to develop the point, since it had nothing to do with value and just compensation, but the majority is not convinced it caused the jury to reduce the award. Similarly, we are not persuaded that the exclusionary ruling as to possible federal contribution affected the result. This, too, had nothing to do with the real issues.

■ To hold that the exclusion of federal participation prejudiced

the verdict requires a conviction that the jury would have increased the award had it known that the cost of the project would be borne principally by federal government rather than by state alone. This, in turn, involves a presumption that the jurors would depart from the issues given them "in charge" by the court in its instructions, contrary to their oath. Neither the plaintiff nor the reviewing court is entitled to indulge in such a presumption. Nor can we say that the evidence that was rejected would in any conceivable way have aided the jury in arriving at the value of the land taken. The error was harmless.

The final assignment of error is directed to the court's instructions. Preliminary to the explanation of the jury's duty to reconcile conflicting expert testimony where possible, the presiding judge stated there had been a conflict in the testimony concerning the most reasonable use and the fair market value of the plaintiff's property. The plaintiff maintains that this statement created an issue where none existed since there was little or no conflict that the highest and best use of the property was for commercial purposes.

It is quite true that it was generally agreed by the opposing experts that the land fronting on Shelburne Road was classified as commercial in the sense that this category gave it the greatest potential value. But the views of these witnesses diverged sharply as to what particular commercial use would give it its highest worth, and to what extent the frontage was adaptable for purposes of trade and commerce. The plaintiff's appraiser envisaged some 480 feet of the frontage available for a wide variety of commercial purposes. The defendant's appraiser limited the usable frontage to 250 feet principally confined to occupancy for motel construction. The record contains an extensive analysis of these possibilities. Quite clearly, this is the conflict the court had in mind.

Later in the charge the presiding judge went to considerable length in explanation of the terms "fair market value" and "most reasonable use", as applied to the issues at hand. Reading the instructions in their full context, we are not persuaded that the jury could have been misled by the particular choice of words upon which error is claimed. *Ackerman* v. *Kogut,* 117 Vt. 40, 45, 84 A. 2d 131. The charge was clear and concise. It correctly applied the law to the facts presented in the evidence and must stand. *Cole* v. *North Danville Cooperative Creamery Association,* 103 Vt. 32, 45, 151 Atl. 568; *Laferriere* v. *Saliba,* 119 Vt. 25, 28, 117 A. 2d 380; *Rome* v. *State Highway Board,* 121 Vt. 253, 257, 154 A. 2d 604.

*Judgment affirmed.*

**Shangraw, J.** dissenting. The question concerning payment of damages by the State of Vermont was improper. The sole purpose was to prejudice the jury and minimize the amount of recovery. The circumstance leaves counsel open to the implication of bad faith. By allowing the answer to stand, the trial court impliedly ruled that the answer was proper, and for consideration by the jury. To say the least, the effect of this evidence on the jury is highly speculative.

The purpose of the second question relating to payment by the United States Government, if answered, might well have had the effect of enhancing the amount of recovery. In such event two trouble spots would have been present.

Neither question on this collateral issue had any place in the case. Two wrongs do not make a right. The defendant opened the door — not the plaintiff. It is my view that the plaintiff is entitled to the benefit of this error. There should be a reversal and a new trial in order that the speculative aspects present in this case may be avoided.

**O'Brien, Superior Judge,** dissenting.

I am unable to concur with the majority opinion.

The first witness called by the plaintiff was Thomas P. Mayo, who identified himself as a Right-of Way Agent in charge of the Court Liason section of the Right-of-Way Division of the defendant State Highway Board. At the conclusion of the plaintiff's examination of Mr. Mayo he was then examined by counsel for the defendant. Of course he was the defendant's witness, although the transcript refers to this as cross-examination.

Commencing at page 50 of the transcript, the following took place:

"Q Is the State Highway Board a part of the Department of Highways?

A Yes, sir.

Q Part of the government of the State of Vermont?

A Yes, sir.

Q Payment for laying out of the construction of highways is paid out by the State of Vermont.

MR. PIERSON. Objection, your Honor.

THE COURT. You withdraw the question and we will exclude it and you restate your question.

Q (By Mr. Frank) I was asking whether payment for land or for

highways — for construction of highways — are paid out by the Treasurer of Vermont?

MR. PIERSON. I object to it on the ground it is irrelevent.

THE COURT. We'll permit the answer. We don't think there is any question about it.

THE WITNESS. Yes.

Q (By Mr. Frank) Is the government of Vermont a non-profit organization?

A I believe so.

Q Many of the activities of the government of Vermont are charitable in character?

MR. PIERSON. Objection. It is irrelevant.

THE COURT. We will exclude it.

Mr. Frank. No further questions at this time.

### REDIRECT EXAMINATION

Q (By Mr. Pierson) You say payments are made from the State Treasury?

A. Yes, sir.

Q And the Federal Government then pays ninety per cent of that?

MR. FRANK. I object to that.

THE COURT. Exculded.

Q (By Mr. Pierson) Does the State of Vermont bear the entire cost in the final analysis of the purchase of property?

Mr. Frank. I object. This is entirely improper.

THE COURT. Excluded.

MR. PIERSON. Your Honor.

THE COURT. Excluded. You don't need to argue the Court. You may have an exception.

MR. PIERSON. May I make an offer?

THE COURT. At the bench, if you wish.

(AT THE BENCH)

MR. PIERSON. If it please the Court, I offer to show this information is just an extension of the testimony elicited by Mr. Frank to the effect that the State of Vermont pays the amount of the damages is clearly misleading as left by him, and I think clearly appeals to the emotions and conservative nature of Vermonters in

general. If the question has been opened up, my line of questioning should be opened.

THE COURT. The ruling stands. You may have an exception."

This subject matter was not responsive to anything covered by the plaintiff's direct examination of this witness.

As stated in the majority opinion, the admission of the evidence relating to the source of payment of the award was irrelevant and error. The question is whether the error was prejudicial or harmless.

The burden is on the plaintiff to show that the error produced prejudice. The test is whether in the circumstances of the particular case it sufficently appears that the rights of the complaining party have been injuriously affected by the error. *Towle* v. *St. Albans Publishing Co.*, 122 Vt. 134, 135, 165 A. 2d 363. *Paul* v. *Drown*, 108 Vt. 458, 461, 189 Atl. 144, while on the question of an offer of improper evidence, sheds additional light on the test. "An offer of improper evidence does not always require a reversal, for much depends upon the character and importance of the offered evidence and the good or bad faith of counsel, and each case must be judged on its own circumstances. But if incompetent and immaterial testimony is offered, with knowledge of its character, and for the purpose of prejudicing the jury, it is error to permit the offer to stand unrebuked, and in the allowance of an exception is an implied ruling that the offer is proper." (Citations omitted)

Counsel for the defendant has had extensive experience in the trial of these so-called highway cases. I cannot believe the erroneous evidence was introduced through ignorance or inexperience. *Niebyski* v. *Welcome*, 93 Vt. 418, 423, 108 Atl. 341.

In my opinion, rulings of the trial court excluding the plaintiff's offers to explain the erroneous evidence made in the hearing of the jury, cloaked the error with an apparent relevancy. When the error is objected to, when efforts to explain it are excluded and when the jury is not instructed that the erroneously admitted evidence is immaterial to the issue, then I believe they can only conclude that the evidence is in the case for them to consider, and to consider in the light of the rulings that here the state pays the entire award and the federal government apparently does not contribute ninety percent of the award.

*Andrews* v. *Watkins' Estate*, 104 Vt. 321, 328, 160 Atl. 176 states: "when one party gives evidence of a collateral fact, it is permissible for his adversary to meet it by giving evidence of another collateral fact that

104

tends to weaken or overcome the impression made on the minds of the jury by the first. *Fuller* v. *Valiquette*, 70 Vt. 502, 504, 41 Atl. 579; *Lamonda* v. *Parizo*, 90 Vt. 381, 384, 98 Atl. 980."

The two cases cited in the above excerpt both state that where the inadmissible evidence has been received, the plaintiff "had the *right* to do away with any impression it may have created in the minds of the jury by evidence of the same character and force which tended directly to meet it". (Underlining supplied). It is difficult to determine if the use of the word "permissable" in *Andrews* v. *Watkins' Estate*, supra, overrules the use of the word "right" in the two cited cases. In any event, *Andrews* v. *Watkins' Estate*, supra, goes on to say "Common fairness requires that it should be permissible to meet it by proof". "Common fairness" is certainly the mildest term that could be used. The trial of a lawsuit requires uncommon fairness.

The defendant had an unfair advantage. The record creates prejudicial, and not harmless error, to my mind. I would reverse and remand for a new trial on all issues.