# Janet and Edward Thorburn v. State Highway Board

[285 A.2d 755]

No. 30-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 1, 1971

Motion for Reargument Denied January 6, 1972

*Black & Plante,* White River Junction, for Plaintiffs.

*James M. Jeffords,* Attorney General, and *Richard M. Finn,* Assistant Attorney General, for Defendant.

**Barney, J.** This is an appeal by the plaintiffs of the award in a highway condemnation case. The only issue in this kind of litigation is the quantity of damages, and the plaintiffs allege that the jury in this case went astray. It is their position that the verdict, properly viewed, demonstrates that the jury either failed to make an award for water rights incontrovertibly taken, or valued them, or the real estate, at a figure insupportably small in view of the evidence. They are here asking for judgment in larger amount, notwithstanding the verdict, or, alternatively, for a new trial.

At issue is the jury's handling of the facts, the area in which their judgment is particularly solicited, and with which courts are most reluctant to tamper. To warrant interference by the trial court on the grounds of inadequacy of the damages, the verdict must be grossly insufficient. The ruling can be reversed in this Court only on a showing of an abuse of discretion, or its equivalent. *Bennett* v. *Robertson,* 106 Vt. 112, 113, 169 A. 901 (1934). The trial court in this case declined to overturn the verdict, and the matter must be reviewed in the light of that action.

The controversy centers around a water right. The state took, by eminent domain, a strip through the plaintiffs' farm for right of way purposes for an interstate highway. The land taken amounted to very nearly twenty-seven acres. At the same time the right of way cut off the buildings and land on the easterly side of the taking from the water supply. The spring itself was not taken, but it became impossible to pipe the supply across the right of way. The spring was not the property of the plaintiffs, and was not on their land, but they did have unquestioned right to it as a water supply.

The property itself was a dairy farm of 130 acres, purchased about 1964 for fifteen thousand dollars. The capacity of the farm as a dairy operation dropped from twenty-six cows to

nineteen cows when the acreage was reduced to 103 acres because of the taking by the state. The buildings were not taken and the right of way, at its nearest point, was some 1200 feet behind the buildings.

There was expert testimony before the jury on damages from both sides. The plaintiffs' witness, classifying various parts of the land taken as having differing values, declared that the twenty-seven acres was worth $9,760. He found the cutting off of the water represented additional injury in the amount of $5000, and that the taking damaged the value of the remaining land, not condemned, to the extent of $17,900.

The state's witness valued the twenty-seven acres at a straight $300 an acre. The loss of water was assessed at $3,150. His total damage figure was $11,300, which included an additional small amount for a drainage right also condemned.

Both experts summarized their opinions of the plaintiffs' damage by assigning the property a value before the taking and a value after the taking. On the plaintiffs' behalf the value before condemnation was set at $86,360, and at $53,700 after. The difference, or total damage, amounted, therefore, to $32,660. The defendant's evidence put the value of the premises at $34,000 before the taking, and at $22,700 afterwards, producing the $11,300 damage figure.

With the evidence before them in this posture, the jury was then instructed as to the disposition they were to make of it. 19 V.S.A. § 221(2) requires the jury to assess the damages resulting from the taking or use of property valued at its most reasonable use, and the direct and proximate lessening in the value of the property remaining, because of the taking. The statute also refers to business loss, which is not at issue here. 12 V.S.A. § 1904a requires the jury to return a special verdict as to each element of special damages specified in 19 V.S.A. § 221(2). *Fiske* v. *State Highway Board*, 124 Vt. 87, 93, 197 A.2d 790 (1964). Overall, the general verdict is to reflect the market value rule, that is, the landowner is entitled to the most reasonable use value of the parcel taken, together with the difference in the same value of the parcel remaining, immediately before and immediately

after condemnation, as a consequence of the taking. *Children's Home, Inc.* v. *State Highway Board,* 125 Vt. 93, 95, 211 A.2d 257 (1965).

This direction was given to the jury by way of the instructions. The court told the jury that the land taken in fee was now gone to the owner, and was no longer a part of his land. In addition, said the court, there has been the taking of a water supply which these plaintiffs would have had. The source is on another person's land, but the conduit has to come through the area on which the highway is to be located, the court indicated, and since he will not be able to use that, for all actual purposes, there is a taking of the water supply. After giving the rule of 19 V.S.A. § 221(2), the judge went on to charge: "So the plaintiffs are entitled to the fair market value of the lands actually taken. They are entitled to any direct and proximate lessening in the value of the remaining land as you find them to be. There are two elements, in other words, of their damages." The court informed the jury as to the market value rule and its reflection in the general verdict. Finally, the requirements of the special verdicts were explained: "You must insert the fair market value of the land you find to have been taken and also the damage, if any, to the remaining land; that is, the direct and proximate lessening in the value of the remaining land. The sum of these two figures must equal the total."

At the close of the charge, no exceptions were noted. A colloquy at the bench did take place, in which defendant's counsel inquired if, in view of the instructions, the taking would include the water as well as the land. The court expressed a willingness to charge further on that question, but counsel agreed that the point had been satisfactorily covered, and nothing further was said to the jury.

In due course a general verdict for the plaintiffs in the amount of $13,000 was returned. The two associated special verdicts allocated the damage as $8,200 for the land taken, and $4,800 for damage to the land remaining. Counsel were inquired of by the court if there were any matters to be taken up before the jury was discharged, but nothing was suggested and the jury was excused. If, indeed, there was

any real doubt or concern as to the significance of the jury's verdict, this was the appropriate time to settle the matter. 12 V.S.A. § 1945 provides for a resubmission of the issues to the same jury before discharge, if it seems a misconstruction of law or evidence by that jury has taken place. Supplemental instructions to clarify the contents of the special verdicts could have been given. However, having in mind the total record, it seems abundantly clear that the award to the plaintiffs would have remained the same, but the claimed ambiguity would have been dissipated by absolute certainty.

The plaintiffs' claim has two aspects. First, they say, the jury was instructed to include the water supply as part of the "take", by which they mean that the value of the water supply to the premises should be part of the damages measuring the land actually taken. From this premise they argue that the verdict is obviously deficient under the evidence, since $8,200 is less than either the $11,300 in the defendant's evidence or the $14,760 in the plaintiffs' case for land taken including the water supply. Returning to their proposition that the value of the water supply, under the instructions, had to be included in the value for the land taken, they further conclude that the $4,800 special verdict cannot be allocable to the loss of the water supply. Therefore, in their view, either a recovery for loss of the water supply was omitted by the jury, or the land and water were valued below anything proper under the evidence. Their remedy is either an additional award for the water, notwithstanding the verdict, or a new trial.

The record quite clearly demonstrates how the jury arrived at its verdicts. The land taking figure is an adoption of the $300 per acre figure of the defendant's evidence, plus the small additional amount for the drainage right. The other special verdict represents the damages for loss of the water, falling slightly closer to the plaintiffs' expert's figure than to the defendant's, but between the two. The evidence before the jury from both of these witnesses separated out the water damage, the plaintiffs' man consistently giving a separate figure for that loss, and the defendant's witness giving a total damage figure including the water damage, and one excluding it. Moreover, both of these witnesses, during their

testimony, assigned the water loss damage as damage to the property remaining untaken. This is somewhat obscured by the fact that the state's witness, unlike the plaintiffs', gave his damage figures in terms of general or total damage, which included the water loss. His testimony that there was no damage to the remaining property was not intended to relate to the interrupted water supply, which he acknowledged represented loss to the plaintiffs.

■ If the special verdict for $4,800 may lawfully be taken as including the compensation for the loss of the water supply, the jury's decision is unimpeachable. Certainly the court made it clear that the loss of water was a damage to be compensated for by verdict. With the evidence on both sides establishing that there was some such damage, we must presume, in support of the verdict, that the jury recognized this loss in its award. See *Lafaso* v. *Lafaso*, 126 Vt. 90, 97, 223 A.2d 814 (1966).

It is, however, quite another thing to say that the language of the court directed the jury to recognize this loss only in the special verdict valuing the land condemned. The court consistently confined that special verdict to the value of the land taken. From this instruction the jury could well have felt bound to confine their first special verdict to the value of the land condemned, and then, rationally, assigning the water loss to the dimunition in value of the property remaining. The jury were never told to treat the loss of water as though it were land. They were aware that the spring itself was not taken, and was not the property of the plaintiffs. They had heard the experts separately value it, and allocate the loss to the damage to the property remaining. However the court and counsel may have discussed the matter among themselves, their views were never communicated to the jury by way of a binding instruction.

It was entirely appropriate for the jury to assign the water loss to the damage to the remaining land. The evidence itself supported that view. As the issue was presented to them, the jury cannot be faulted for its division of the damages. This conclusion rejects the contention of the plaintiffs that some element of damage was overlooked or erroneously discounted.

The jury's verdict was fully sustained by the evidence and proper in law.

*Judgment affirmed.*

## On Reargument

**Barney, J.** After the announcement of the opinion in this case, the plaintiffs made timely application for leave to reargue, and their motion was granted. The issue related to the asserted failure of the jury to follow the charge given by the trial court as invalidating the verdict as a matter of law in the circumstances of this case. A majority of the Court is convinced that the issue was properly disposed of in the original opinion and that the award should stand.

*Let the original order affirming the judgment be certified to the Orange County Court.*

## On Reargument

**Holden, C.J., dissenting.** As a result of reargument of this appeal, I am persuaded that the jury's verdict in this case cannot be reconciled with the evidence, nor with the court's instructions at the time the cause was submitted. I would reverse the judgment and remand for further hearing to achieve a proper verdict consistent with the requirements of 12 V.S.A. § 1904a and 19 V.S.A. § 221(2).

The right to take water from a source located on the lands of another is a property right in the land to which it appertains. *Griswold* v. *Town School District of Weathersfield,* 117 Vt. 224, 225, 88 A.2d 829 (1952) ; *Davidson* v. *Vaughn,* 114 Vt. 243, 248, 44 A.2d 144 (1945). When such a property right is taken for public use in the course of highway construction, the owner is entitled to its equivalent in money. Vt. Const. Ch. I, art. 2; *Makela* v. *State of Vermont,* 124 Vt. 407, 409, 205 A.2d 813 (1964) ; *Sanborn* v. *Village of Enosburg Falls,* 87 Vt. 479, 483, 89 A. 746 (1914).

The Legislature has seen fit to require the jury in a highway condemnation proceeding to find separately, by special verdicts (1) the damages resulting to the owner from the taking of his property or property rights in the

land condemned and (2) the direct and proximate lessening in the value of the land remaining, caused by the taking or severance of the property appropriated by the State. 12 V.S.A. § 1904a and 19 V.S.A. § 221 (2). The trial court instructed the jury that in addition to the taking of land,—"there has been a taking of a water supply." On this point, all are agreed.

The plaintiffs' appraiser valued the water rights at $5,000 and the value of the land taken at $9,760, with consequent damage to the land remaining at $6,000. The State's expert combined the value of the land and water rights at $11,300, without any severance damage to the remainder. The jury's award of $8,200 for the land and water rights falls short of the minimum valuation presented in the evidence.

The opinion of the majority salvages the result reached by the jury on the assumption that compensation for the taking of the water supply is included in the verdict of $4,800 for damage to the land remaining. There is no assurance of this from the record. And if such was the course of the jury's deliberation, it is contrary to the court's instructions and at variance with express requirement of the statute. In my judgment; a verdict in this posture should not stand.