# American Oil Co. et als v. State Highway Board

[ 177 A.2d 358 ]

November Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 2, 1962

*John B. Harrington* and *Robert K. Bing* for the plaintiffs.

*Louis P. Peck,* Legal Assistant to the Attorney General, for the State Highway Board.

**Barney, J.** The State Highway Board condemned, for interstate highway system construction purposes, a certain parcel of land and the filling station on it owned in fee by appellees Robert and Elizabeth Krupp. Appellee American Oil Company also has an interest in this land by virtue of a long-term lease from the Krupps. Appellee Roscoe Campbell is a sublessee from year to year from American Oil Company. There also appears to be a mortgage interest in this same parcel whose holder has not appealed. A single award of damages was made by the highway board for the land taken. The owner in fee, the tenant and the subtenant all filed separate appeals from the award.

Prior to hearing on the merits the county court was confronted with two motions made by the highway board. The first relates to the claim of the condemnees that the highway board is required to separately compensate each of the interests in the property. This question is sought to be raised by the mechanics of a motion by the highway board to strike from the appeal notice the language to the effect that the legal interests in such property have not been separately compensated. The second motion by the highway board asks that the three appeals be consolidated for trial before the county court. Both motions were denied. Permission was granted to the highway board by the lower court to pass these causes to this Court before final judgment. By agreement of the parties, the appeals were consolidated here for the purposes of briefing and argument.

The motions reflect the two principal points argued by both sides before this Court:

1.  Is it required of the highway board to award damages to each of the separate holders of interests in a single condemned parcel, adjudging the proportionate share of each?

2.  Does 19 V.S.A. §232 accord to each holder of an interest in such parcel who is dissatisfied with the highway board's award the right to a separate jury trial on appeal to county court?

The first question deals with proceedings before the highway board. The statutory section governing awards is 19 V.S.A. §230, and the pertinent portion reads as follows:

> "Within twenty days after the board's hearing, it shall by its order fix the compensation to be paid to each person from whom land or rights are taken, and shall file such order in the office of the clerk of the town where such land is situated, to be recorded therein and shall deliver to each person or persons a copy of that portion of the order directly affecting such person or persons and shall pay or tender ninety-five per cent of the award to each person entitled thereto which may be accepted, retained and disposed of to his own use without prejudice to such person's right of appeal as hereafter provided. At the expiration of the period for taking an appeal from the amount of the award the board shall pay the remaining five per cent to each person entitled thereto who has not appealed from said award. Upon the payment or tender of ninety-five per cent of the award as above provided the board may proceed with the work for which such land is taken."

The attention of the parties is directed to the phrase "paid to each person from whom land or rights are taken." The holders of the various interests in the land, collectively the appellees here, contend that the plain mandate of the statute requires the highway board to make individual awards to them. The appellees say that the language used is so clear as to admit of no other construction, and, indeed, needs no judicial interpretation. Although this is not the whole ground of their justification of the lower court's ruling, we feel it needs some separate comment.

The concern of courts in considering statutory meaning is directed at determining the corrective action the legislature sought to accomplish by the enactment. This is legislative intent. It is our sole concern. *Noble* v. *Fleming's Estate,* 121 Vt. 57, 59, 147 A.2d

889. Literal construction operates as a starting point. *Marshall* v. *Brattleboro,* 121 Vt. 417, 419, 160 A.2d 762. But so long as the meanings of words are not absolute, so long as the content of words varies according to context, custom and usage, interpretation is implicit whenever a statute is read, even though the interpretative function is unexpressed. 2 Sutherland, Statutory Construction, §§4502-3 (3d ed. 1943).

The appellees say that the equity, fairness and public policy considerations of their version of the statute's meaning support their view of the legislative purpose. Any other interpretation is criticized as forced, artificial, unnatural and strained. The procedure endorsed in the lower court is urged as being more expedient, simpler and fairer than the present single award system.

The highway board counters with the argument that requiring it to make adjudications of the value of all interests subordinate to the fee in a single parcel will complicate and delay highway condemnation litigation and multiply appeals beyond all reason, in many cases. In effect, the hearing before the board, instead of being a single value-determination proceeding, will become a series of proceedings to value the various types of property interests involved, coupled with the prospect of separate appeals from each. This, it says, is neither simple nor expedient. The board claims that, of necessity, it will be called upon to adjudicate, in the midst of condemnation proceedings, all manner of complex and involute collateral questions of title, possession, inheritance, trust terms, contract conditions, paternity questions, domestic relations issues, to name only a few. The highway board says it is not a tribunal appropriate for making, or empowered to make, definitive and binding adjudications on such matters between parties. To require them to submit such issues to it for decision is contended to be unfair to all concerned.

These are telling and persuasive arguments. The potential questions to be resolved by the board encompass the competence of the probate court and a large measure of that of the county courts of law and chancery. To accept the appellees' position we must say, for example, that the highway board is empowered to render a judgment binding on all parties in a complex estate, interpreting the will, determining descent and the rights of remaindermen, vested and contingent, heirs born and potential heirs unborn, presence or absence of fraud

and undue influence, and all the other knotty questions now reserved to probate law. So also with divorce, contract and property law.

■ Moreover, the highway board cannot qualify as a forum for trying these issues properly. For example, the board does not have power to summon witnesses, compel the production of documents, or to punish for contempt. These rudiments of judicial power are absent. Compare this with the careful statutory pattern of authorization of probate courts in 4 V.S.A. §§271-369. Certainly the broad jurisdiction claimed for the highway board by the appellees needs to be founded on something more than the inferences to be drawn from the "each person" phrase in the statute involved. The intent to create such a tribunal requires positive expression and clear language from the legislature, for protection of the many interests concerned. *Rutland Cable T.V., Inc.* v. *City of Rutland,* 122 Vt. 1, 4-5, 163 A.2d 117.

Moreover, to read the statute as the appellees would have us would mean that the legislature had completely lost sight of the basic concept of condemnation as expressed in the Vermont Constitution, Chapter I, Article 2:

"That private property ought to be subservient to public uses when necessity requires it, nevertheless, whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money."

The proceedings focus on the property, and partake of the nature of *in rem* proceedings. The phrase "compulsory purchase" has been used to describe them. *In re Barre Water Co.,* 62 Vt. 27, 31, 20 Atl. 109, 9 L.R.A. 195; 29 C.J.S. Eminent Domain, §1, p. 776. Previous to 1957, condemnation procedures followed what might be termed the "orthodox" view pretty closely. *Demers* v. *Montpelier,* 120 Vt. 380, 387, 141 A.2d 676; *Nelson* v. *State Highway Board,* 110 Vt. 44, 53, 1 A.2d 689, 118 A.L.R. 915. In 1957, however, the legislature, by the enactment of No. 242 of the Acts of 1957, made substantial changes in our condemnation law, now 19 V.S.A. §§221-236. These changes were in part procedural and in part a substantive liberalization of the rule as to business loss associated with the taking of property. *Penna* v. *State Highway Board,* 122 Vt. 290, 291-2, 170 A.2d 630. Nothing in the new statutes indicated an abandonment of the constitutional call for replacement of the property taken by an equivalent in

money, however. The interpretation urged by the appellees departs from this theory completely and would substitute a system of recompensing all persons who could demonstrate a loss personal to them deriving from any interest in the property taken. As we have said, this is too sweeping a change to be grounded merely on the interpretation of the phrase "each person." This becomes even more striking when that phrase is compared to the more precise language used by the same legislature to make the relatively smaller extension of damages to include associated business loss.

■ From this it follows that we find no legislative intent to set up the highway board as a trial body of extended jurisdiction, nor to overturn the basic theory of compensation deriving from our constitutional requirement of the payment of a just equivalent in money for property taken.

A more serious difficulty in appellees' position must not be overlooked. Constitutional considerations also bar the functioning of the highway board as ·a tribunal competent to try out the many issues involved in determining the measure and validity of various interests in property. Chapter II, Section 5 of the Vermont Constitution requires that "The Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others."

■ To argue that the legislature intended to make the highway board a tribunal for adjudicating such issues, is to contend that the legislature intended to defy constitutional restrictions. This argument we cannot accept. The Vermont Constitution functions as a limitation on the powers of the legislature. *Rafus* v. *Daley,* 103 Vt. 426, 432, 154 Atl. 695. We will not assume that the legislature overlooked the requirements of the Constitution. *Trybulski* v. *Bellows Falls Hydro-Electric Corp.,* 112 Vt. 1, 10, 20 A.2d 117. If the statute in question is amenable to a construction that avoids the constitutional conflict and, at the same time, generally carries out the legislative objectives, such construction will be preferred over the unconstitutional one. *In re Cornell,* 111 Vt. 454, 460, 18 A.2d 151. We must, therefore, establish the statutory meaning in the light of this requirement.

There still remains, however, the determination of the proper interpretation of "paid to each person from whom land or rights are taken," and through it the intended meaning of 19 V.S.A. §230.

Turning from the "each person" concern of the appellees to the phrase "land or rights" helps clarify the matter.

19 V.S.A. §221 is the opening provision in the "Condemnation" chapter of the statutes and deals with definitions of certain words used in the succeeding sections. In that statute we find that the concern of condemnation is with "damages resulting from the taking or use of property under the provisions of this chapter." In the following section, 19 V.S.A. §222 appears this language: "The board * * * may take any land or rights therein that it deems necessary for such purpose * * *;" and further on: "The notice shall set forth the purpose for which the land and rights are desired * * *." 19 V.S.A. §223 opens this way; "When the highway board desires to take land or any rights therein * * *." This is followed by 19 V.S.A. §224, which reads:

> "Upon completion of such survey the highway board shall thereupon petition a superior judge, setting forth therein that such board proposes to take certain land, or rights therein, and describing such lands or rights, and the survey shall be annexed to said petition and made a part thereof. Such petition shall set forth the purposes for which such land or rights are desired, and shall contain a request that such judge fix a time and place when he, or some other superior judge, will hear all parties concerned and determine whether such taking is necessary."

The pattern of those provisions suggests that the legislature was, by "land and rights," referring to the nature of the interest the board was seeking to acquire in the land, and was not referring to any of the various possible property interests existing in the particular land affected by the proposed taking. This is emphasized by the phrase in the section just quoted (19 V.S.A. §224), "Such petition shall set forth the purposes for which such land or rights are desired * * *." It would amount to a considerable coincidence that the rights desired by the highway board were the identical rights held by some person in connection with the property to be taken. The whole concern of the condemnation chapter of the statutes is with the interest in the property the highway board wishes to obtain in order to build its road. It is with this property interest that the phrase "land and rights" is equated.

■ It is again significant that whenever the statute refers to the actual "taking" process or the actual payment of compensation some form of the phrase "land and rights" is used exclusively. 19 V.S.A. §§227, 229, 230 and 236. This consistency tends to show that the legislature had the same meaning in mind each time these words were used. *Billings* v. *Billings,* 114 Vt. 512, 517, 49 A.2d 179, 169 A.L.R. 855.

■ Other phrases referring to property interests appear in statutes relating to notice and hearing. Here, where the legislature intended to provide for the broadest kind of opportunity to be heard for affected persons, it employed different language to refer to their interests. 19 V.S.A. §226, relating to service and publication, refers to persons "owning or having an interest in land." 19 V.S.A. §227 also refers to persons "owning or having an interest in lands to be taken or affected." It also speaks of "other property owners whose interest may be concerned or affected." These phrases occur where the statute deals with the right to be heard at the necessity hearing, and where the court is given authority to cite in additional parties in the interest of seeing that all those concerned are given notice and opportunity to be heard. This accounts for the requirement in 19 V.S.A. §223 that not only land to be taken, but land to be affected must be surveyed.

Enough has been shown to illustrate that, generally, when the legislature was referring to property rights of persons affected by the taking, it used language appropriate to that end by referring to persons "having an interest" in the land involved; and when the legislature was referring to the measure of the property right required for the highway project, it used different language—"land and rights." The two were not interchanged.

Viewed in this light, much of the force of appellees' position is lost. This is because their claim that the highway board is bound to make distribution of damages among all holders of property interests in the particular parcel is based upon a reading of "rights" in 19 V.S.A. §230 as referring to rights held by persons interested in the property. Instead, as we have seen, the word refers to the interest the highway board is seeking to acquire. Since the meaning appellees ascribe to the word "rights" does not accord with legislative intent, their position is unsupported.

■ It follows from this that the "person" referred to in 19 V.S.A. §230 should be one from whom such "land or rights" can be "taken." To put it another way, the "person" involved must be the one or ones who are able to validly convey title to these "lands and rights" as taken. Looking at 19 V.S.A. §229, we find a hearing provided for "when an owner of land or rights and the board are unable to agree on the amount of compensation to be paid therefor * * *." This is indicative of the interest contemplated in the "person" of 19 V.S.A. §230 although "owner" is admittedly more definitive than "person." But situations come to mind where the right to be taken is of such limited scope that the holder of less than the fee can convey it out of his holding, such as a spring right. It seems clear that when directing the drawing of the compensation order the legislature used the term "person" advisedly to make certain the statute was not inadvertently made too narrow.

■ Since this view of the matter yields an orderly result consistent with the accomplishment of the statutory purposes, as contrasted with the drastic consequences of the appellees' contentions, we take the view that the legislative intention is correctly interpreted as contemplating a single proceeding against the property in the nature of an *in rem* action transferring to the highway board the required right in the property in return for money damages representing its fair equivalent, passing in the first instance to the person having the legal capacity to convey the interest acquired.

Turning now to the overruled motion made by the highway board to consolidate these appeals for jury trial purposes, a procedural difficulty immediately intrudes itself. Nothing exists in the record to perform the function of transferring this question to this Court.

By contrast, the appealed question already considered is supported by a written court order giving permission to appeal the question before final judgment; and notices of appeal referring to that court order and permission, by their terms restricting themselves to the issue of separate awards, have been filed. None of these makes any reference to the motion for consolidation or the ruling thereon.

Neither the transcript nor the record demonstrate that the court below ever gave permission in any form for an appeal of its ruling on this motion before final judgment. The file contains no order nor any record of any ruling permitting review, as contemplated by *Brown* v. *Brown,* 121 Vt. 283, 284, 155 A.2d 748.

■ The very content of the motion discloses that the ruling denying it is not a final order. All that the case reveals is that the motion was denied orally by the trial court and an exception noted orally on the record in the board's behalf. Nothing is here showing that permission to appeal this ruling was sought by the highway board, or granted by the court below. Appellate review of this issue under the authority of 12 V.S.A. §2386 cannot be granted in such circumstances. *Murphy Motor Sales* v. *First National Bank,* 121 Vt. 404, 405, 159 A.2d 94.

In denying the highway board's motion relating to the unitary nature of the damage award, the court below mistook the law. The court's order treated as a valid objection appellees' contention that the award is defective beause it fails to apportion damages among the claimants. This is error.

*Order reversed, and cause remanded for further proceedings not inconsistent with this opinion.*