**William E. Sharp, Robert A. Sharp, Mary A. Sharp and Frances C. Sharp v. Transportation Board of the State of Vermont**

[451 A.2d 1074]

No. 55-81

Present: Billings, Hill and Underwood, JJ., and Daley and Larrow, JJ. (Ret.), Specially Assigned

Opinion Filed July 15, 1982

Motion for Reargument Denied September 10, 1982

*Abatiell and Abatiell,* Rutland, for Plaintiffs-Appellees.

*John J. Easton, Jr.,* Attorney General, and *Richard M. Finn,* Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Underwood, J.** The State appeals a jury verdict in a highway condemnation case awarding the plaintiffs a total of $398,449 to compensate them for (a) the taking of certain lands on Quarterline Road in the Town of Rutland upon which they ran a dairy and dairy farm ($278,875); (b) a business loss for the dairy, which processed milk and distributed it to retail customers ($111,874); and (c) severance damages to the land they retained ($7,700).

The Legislature has required that the owner of property taken by the State for highway purposes be compensated in the following fashion:

> Damages resulting from the taking or use of property . . . shall be the value for the most reasonable use of the property or right therein, and of the business thereon, and the direct and proximate lessening in the value of the remaining property or right therein and the business thereon.

19 V.S.A. § 221(2).

The State under its power of eminent domain initially sought to condemn about 22 acres of the plaintiffs' farm to construct a portion of the U.S. Route 4 bypass of the City of Rutland. To avoid a contested necessity hearing at this stage of the condemnation proceedings, the State entered into stipulations of necessity with the plaintiffs and other disgruntled property owners. These stipulations did not affect the property owners' rights with regard to the amount of compensation they would be paid. 19 V.S.A. § 227b(f).

Also filed with superior court in the necessity proceedings in 1975 (Docket No. C 104-73 Rc) was an ambiguous document signed by the defendant's attorney and the plaintiffs' attorney. In this instrument, which greatly confused the

subsequent proceedings, it was agreed and understood that the State would purchase from the plaintiffs

> the *entire* business operation they now conduct including *all* real property located adjacent to Quarterline Road in the Town of Rutland, Vermont and all personal property now comprising said business.
>
> The said [plaintiffs] shall withdraw any objection to the necessity for highway project West Rutland-Rutland F 020-1(11). (Emphasis added.)

The document, however, contained no price for the State's purchase of the entire business and all real property, it apparently being the parties' intent to resolve this detail in the statutory damage proceedings. See 19 V.S.A. § 227b(f); 19 V.S.A. § 221(2). In any event, the agreement was not followed because the State did not purchase "the entire business operation . . . including all real property," but left plaintiffs with about five acres of land and buildings. Thus it is not necessary for us to address here the propriety of this agreement.

The superior court, in its Order of Necessity dated December 23, 1975, incorporated in substance the provisions of the above stipulation. But, thereafter, on December 20, 1976, an order of the Transportation Board fixing compensation at $35,000 for the taking of just under 22 of plaintiffs' 79.5 acres was filed with the Town Clerk of Rutland. This order was subsequently amended by the Board on March 15, 1977, to fix compensation at $80,000 for the taking of about 74.5 acres, leaving title to about five acres in plaintiffs' possession, in spite of the stipulation. The order further provided:

> Also included in this conveyance is all the personal property, which is part of the dairy operation, as itemized on an inventory dated March 15, 1977, and payment for said personal property is included in the . . . award.

Compensation for the personal property—cattle, farm machinery, dairy equipment, etc.—was fixed by the Transportation Board at $23,625, making the total award in the amended order $103,625.

Plaintiffs filed their appeal from this amended order of the Board fixing compensation "for the taking of land, personal

property and related rights therein" on June 15, 1977 (Docket No. S24-77 Rm).

The next twist in this procedurally bizarre case is a document entitled "Settlement Agreement—Personal Property," signed by the Board's attorney and the plaintiffs' attorney in December 1980. This document stated that the parties

> hereby agree that a stipulation agreeing to an entry of "dismissed with prejudice" may be filed by the State Transportation Board, with the Rutland Superior Clerk in connection with the appeal of [the plaintiffs] from the order awarding compensation in the amount of $23,625.00 . . . .
>
> . . . .
>
> The sum of $25,000.00 is agreed to be the full consideration including interest and costs for discontinuance of the appeal in this case as it relates to the personal property. . . .

Since neither our condemnation statutes nor the Vermont Constitution provide for an award to a property owner for the taking of personal property independent of business loss, except as it may be a fixture attached to the real estate, this stipulation is baffling. Fortunately, its propriety is not an issue before us.

The plaintiffs' appeal went to trial by jury before the superior court in December 1980. By special verdicts the jury found (1) The fair market value of land taken was $278,875; (2) The direct and proximate lessening in the value of plaintiffs' remaining property caused by the taking was $7,700; and (3) The "fair market value of business taken $111,874." The general verdict was for $398,449. The State's motion for a new trial was denied. On January 15, 1981, the superior court entered judgment on the verdict. The State thereupon timely appealed to this Court.

Before addressing the issues raised by the State's appeal of the jury's verdict, we re-emphasize the fact that the plaintiffs, notwithstanding the stipulation to sell everything to the State, retained five acres. These five acres contained two dwelling houses and all the barns and outbuildings formerly used in the farming operation and dairy business.

■ The State in its appeal urges three grounds for reversible error. The first, which need not detain us long, is that the court erred by barring the State from examining its own expert, in rebuttal, as to certain comparable sales which the State initially brought out in its cross-examination of the plaintiffs' expert appraiser. Rulings as to the foundation of an expert's testimony is a matter of discretion with the court. "The latitude allowed the trial court in passing on opinion evidence is nowhere greater than that pertaining to the market value of property being acquired in condemnation proceedings." *Farr* v. *State Highway Board*, 122 Vt. 156, 161, 166 A.2d 187, 190 (1960). We will reverse a lower court in matters committed to its discretion only upon a showing that the court abused its discretion, and that prejudice flowed from that abuse. *Hoague* v. *Cota*, 140 Vt. 588, 592, 442 A.2d 1282, 1285 (1982); *Miller* v. *Ladd*, 140 Vt. 293, 297, 437 A.2d 1105, 1108 (1981). Our review of the record discloses no abuse of discretion.

The two remaining claims of error are considerably more troublesome. First, the State argues that the court's instructions on the issue of business loss were so fraught with error that they did not give the jury proper criteria for determining whether the plaintiffs had actually suffered a business loss separate and distinct from the land taken, much less provide any means or method to properly assess the value of such a business loss.

Secondly, the State claims that the jury, saddled with inadequate instructions, gave the plaintiffs double compensation. We agree with both claims, and therefore reverse.

■ Business loss may be allowable to a property owner only where his fixed and established business is harmed or destroyed when the land upon which it is situated is appropriated for highway purposes, *O'Brien* v. *State Highway Board*, 123 Vt. 414, 416, 190 A.2d 699, 701 (1963); *Record* v. *State Highway Board*, 121 Vt. 230, 237, 154 A.2d 475, 480 (1959), and then only to the extent that "the plaintiff has suffered a loss to his business which has not necessarily been compensated for in the allowance made for his land." *Penna* v. *State Highway Board*, 122 Vt. 290, 293, 170 A.2d 630, 633 (1961). See also *Colson* v. *State Highway Board*, 122 Vt. 392,

395, 173 A.2d 849, 852 (1961). Accordingly, the issue of compensation for the land taken should first be resolved. This step involves determining the highest and best use, and attaching a value to the land for that use. The principles here involved are by now well established and were adequately dealt with. Thus we see no reason to tamper with the jury's award of $278,875 in compensation for the land taken.

Only after dealing with compensation for the land taken should the jury be directed to move on to the issue of business loss.

█ The first step in calculating business loss involves proving the value of the business as a whole. From evidence on the value of the business as a whole it is possible to determine whether

> the plaintiff has suffered a loss to his business which has not necessarily been compensated for in the allowance made for his land. The nature of the business and the manner in which the plaintiff marshals his proof will be determinative as to whether the court will be justified in submitting the business loss as a separate item.

*Penna, supra,* 122 Vt. at 293, 170 A.2d at 633. Whether business loss may exist is determined by subtracting the highest-and-best-use value of the land taken from the value of the business thereon as a whole. If there remains anything left over after the highest-and-best-use value of the land is subtracted from the value of the business as a whole, then the plaintiff has proved that he had something of value to lose which is not compensated for in the allowance made for his land.

However, even where the actual use is the highest and best use, it may sometimes be the case that no business loss is present.

> A plaintiff is entitled to be compensated both for the loss of his land and the loss of his business. If the evidence he presents concerning the land reflects both the value of the land and the business on it, as it almost inevitably does in the case of farm land, for instance, then, to compensate the landowner for his business loss, that is, farm

income as well as the land, is to give him double compensation.

*Id.* at 293, 170 A.2d at 633.

Another, more subtle danger of double compensation exists in the present case, where the highest and best use of the land is different from its actual use. The judge charged the jury to award the plaintiffs

the fair market value of the plaintiffs' dairy business, . . . not including the tangible personal property used in the business, or real property, such as cows, land, equipment, and so forth.

This charge, in combination with the instruction requiring the jury also to allow the plaintiffs compensation for the highest and best use of the land, opened the door to double compensation, which the jury entered.

It is undisputed that the highest and best use for the land taken is residential development, and that the actual use is for a dairy operation. The value of the land taken for its highest and best use was more than double the highest figure for the value of the business, even assuming it was in fact "taken" in toto. A verdict based, as this was, on residential-use value is necessarily based upon the assumption that the existing business use will be discontinued, and that such discontinuance is a factor considered in the economic determination of highest and best use. Thus, compensation for residential use necessarily assumes discontinuance of the commercial use and compensation therefor.

The plaintiffs cannot be entitled to compensation for business loss unless the value of the business as a whole exceeds the highest-and-best-use value of the land taken, regardless of whether the land is actually used for its highest and best use. If nothing is left over, no business loss exists to be recovered by the plaintiffs.

In some cases, as here, the actual use of the land will be different from its highest and best use. This should make no difference in the calculations. If nothing remains after the highest-and-best-use value of the land taken is subtracted from the value of the business as a whole, then the land-

owner has been fairly compensated "in the allowance made for his land." *Id.* at 293, 170 A.2d at 633.

 If a jury upon proper instructions determines that the taking of his lands did not totally destroy his business, it may compensate the property owner for his consequential damages in a special verdict for diminution in value of the business remaining. 19 V.S.A. § 221(2); 12 V.S.A. § 1905. See, e.g., *Gibson Estate* v. *State Highway Board,* 128 Vt. 47, 50–51, 258 A.2d 810, 812–13 (1969). But here the plaintiffs failed to prove any actual diminution in value of the business remaining. They seem to have assumed that they were entitled to recover both the full fair market value of their business and the highest-and-best-use value of the land appropriated. However, "[i]t is only to the extent that a business is taken by the appropriation of the land on which it is situated that the legislature meant that compensation be paid." *Record* v. *State Highway Board, supra,* 121 Vt. at 237, 154 A.2d at 480.

 This failure in the plaintiffs' proof may have been attributable to the continuing confusion caused by the stipulation to the effect that the State would purchase the entire business operation and all of the real estate. Thus the court below noted:

> [T]he State has agreed in effect that the taking caused the termination of the business, and that the business had to shut down, couldn't continue at another location.

In fact, however, the stipulation was abandoned somewhere along the way, making it unnecessary for us to consider whether it was proper in proceedings of this nature. The State did not take the plaintiffs' entire operation, but left them about five acres and all the business outbuildings. Moreover, the parties did not agree upon a price for the property set forth in the stipulation. The plaintiffs, dissatisfied with the Transportation Board's award of damages for what was ultimately condemned, chose to appeal the award, 19 V.S.A. § 231, rather than sue the State for breach of contract for failing to purchase the entire property described in the stipulation. Plaintiffs received a trial de novo with a jury to

resolve the issue of damages for the land taking, business loss, and the diminution in value of the property remaining. "The theory thus adopted became the law of the case." *Krupp v. State Highway Board*, 125 Vt. 25, 28, 209 A.2d 320, 322 (1965).

That the plaintiffs have continued business prospects after the taking is indicated by the following colloquy between one of the plaintiffs and their attorney:

Q. Okay. Was there any way that you could have stayed in business in 1977 after the State took this land and the other equipment and machinery?

A. Not the business of farming, but possibly could have stayed in the milk business if we were compensated enough money from the State.

Q. By that you mean to stay in the milk business after they took all this stuff away from you, they would have to compensate you enough to do something else?

A. Right.

Q. Is it possible to have a dairy milk business without acreage, without land?

A. Oh, sure.

Q. In your opinion, is the land that you owned different than the dairy business that you were in?

A. It certainly is.

Q. Are there dairies that run with no cows?

A. Right. Seward's Dairy is a good example.

Q. Are there dairies that run with cows that just stay in barns for their life?

A. Yes, that is right.

Plaintiffs thus admitted that their business was not necessarily destroyed by the taking, contrary to the assumption upon which the verdict was based, but offered no proof as to any diminution in value.

The jury by special verdicts set the price of $278,875 for the highest and best use of the 74.5 acres taken and $111,874 for the value of the business loss. The plaintiffs are entitled to the higher figure, but not to both. The $7,700 special verdict for severance damage was not contested and

should be affirmed. For the reasons contained herein, no business loss is recoverable in the instant case.

*The special verdicts for the land taken and for severance damage to the land retained are affirmed. The special verdict for business loss is stricken and the cause is remanded for entry of judgment consistent with this opinion.*

## On Motion for Reargument

The plaintiffs' motion for reargument indicates a failure to understand the formula for computation of business loss adopted by this Court in the original opinion in this case. Accordingly, we take this opportunity to address the objections raised and clarify the issues involved.

The plaintiffs argue in their motion for reargument that the formula for business loss we adopted in the original opinion guarantees that no business loss can ever be awarded under the statute. This argument is specious. It misinterprets our opinion, which states that business loss may be awarded only when the value of the business as a whole is greater than the highest-and-best-use value of the land, in which case the plaintiffs are entitled only to the excess as business loss.

The plaintiffs assume that by the phrase "value of the business as a whole" we mean the business, less the realty and personalty. This is wrong. The value of the business as a whole includes (a) the contribution made by the land to the business, (b) the personal property used by the business, (c) the going concern value of the business, (d) the increased value derived from the fact that tangible assets are combined in a single unit and are already functioning in the marketplace, and (e) where appropriate, goodwill.

This case was complicated by the fact that the highest and best use of this land—for residential building lots—was different from its actual use. Since the land could not have been used simultaneously both as a dairy farm and for residential building lots, we held that to permit an award for the value of the business as a whole, plus the highest-and-best-use value of the land, would compensate the plaintiffs twice for the same thing—the realty. This double compensation occurs because the value of the business as a whole includes the value

of the land as actually used in the business. Thus, we adopted a formula which insures that the property owner is reimbursed for the value of the land only once.

The plaintiffs argue that the formula they used to calculate business loss included only the going concern and goodwill values of the business, and excluded the value of the land and personalty, which were the subject of separate awards. They contend, as a consequence, there was no double compensation. It is true that their expert claimed that the value he put on the business included only the going concern or goodwill portion of the business, and excluded the real and personal property. However, saying so does not make it so. The plaintiffs' expert utilized a rough and ready version of the capitalized earning approach. This evidence, however, was badly constructed and labelled as representing the value of a part, rather than as the value of the business as a whole. More specifically, the expert testified that the figure produced by his version of the capitalized earnings approach represented the value only of the going concern and the goodwill of the business, and did not include the value of the real estate or personal property.

■■■ The correct use of the capitalization of income method, however, values the business as a whole. This aggregate value includes the value of all the business assets—real and personal, tangible and intangible, and includes goodwill. Schilt, *An Objection to the Excess Earnings Method of Business Appraisal*, 58 Taxes 123, 124 (1980).

■■■ The existence of goodwill depends on the amount of the earnings, but here there is nothing in the record to show whether the plaintiffs' earnings are more or less than the dairy industry average. Thus, there is no evidentiary basis to support that this business possessed any goodwill at all. See Note, *An Act to Provide Compensation for Loss of Goodwill Resulting from Eminent Domain Proceedings*, 3 Harv. J. on Legis. 445 (1966).

■■■ In any event, the highest-and-best-use value of the plaintiffs' land was more than twice the value of the plaintiffs' business as a whole, which included the value of the realty as it was actually used. As we noted in the original opinion, the

plaintiffs can use the land either for their dairy operations or for residential building lots. Accordingly, they cannot be compensated for both actual use and highest and best use.

We recognize the possibility that in some cases the value of the realty alone, as actually used, may be less than the highest-and-best-use value of the land, which is in turn less than the value of the business as a whole—realty and personalty, tangible and intangible assets, combined in a single unit. The formula we adopted in the original opinion insures that in such circumstances the property owner will be compensated for his business loss as required by the Legislature, yet prevents double compensation for the land. The property owners here have received the compensation due them under the statute.

*Motion for reargument denied.*