**Pinewood Manor, Inc. v. Vermont Agency of Transportation**

[668 A.2d 653]

No. 94-108

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 8, 1995

Motion for Reargument Denied October 30, 1995

*Paul D. Jarvis* and *Richard R. Goldsborough* of *Jarvis and Kaplan, Burlington,* for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, and *Scott A. Whitted,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Johnson, J.** Plaintiff Pinewood Manor, Inc. [Pinewood], appeals a decision from the Chittenden Superior Court in a condemnation proceeding. Pinewood contends that the trial court erred in its findings regarding: (1) the value of the condemned land, (2) appropriate business losses, (3) adequate severance damages, and (4) the interest on the judgment. The State cross-appeals the trial court's decision to award business losses. We reverse on the issue of business loss and revise the interest award to include that accrued from December 10, 1993 to February 15, 1994. In all other respects, we affirm.

Pinewood has developed the residential area known as Pinewood Manor, situated on the northerly side of Vermont Route 117, into residential subdivision lots since the early 1960s. In addition to subdividing the land and providing the infrastructure, it normally constructs the houses on the individual lots sold.

Effective February 16, 1990, the Chittenden County Circumferential Highway District condemned land owned by Pinewood within its development. The condemnation covers 8.93 acres, including ten lots in Section F of Pinewood's overall development. At the time of the taking, Pinewood had already obtained the required subdivision permits and plotted out the lots. Though Pinewood had not yet completely finished the infrastructure, it had begun to install some of the required roads and utilities.

The trial court found that the lots should be valued at $30,000 each for a total of $300,000. It rejected Pinewood's contention that the lots were worth $65,000 because they were not ready to be sold on the

open market on the date of the taking. The court noted that Pinewood had not cleared the lots of trees, paved the roads, or brought sewer, water and electricity to each site.

In addition, the court held the State liable to Pinewood for business losses and severance damages in the amount of $150,000 and $26,500 respectively. The court reasoned that business losses were due to Pinewood because its practice was to develop the land and then sell it with a contract for the construction of a house. Therefore, the court considered Pinewood a fixed and established business that extended beyond mere land development. To find business loss, the court used historical profits from the Pinewood Manor development to calculate an average expected profit of $15,000 per house. The court multiplied this average profit by the ten lots taken to reach an ultimate award of $150,000. No contracts for construction of the houses on the ten condemned lots had actually been entered into.

To limit the number of condemned lots to ten, the trial court acknowledged that Pinewood would have to create three new lots from portions of the remainder. The reconfigured lots' proximity to the highway, however, reduced their value by ten percent. Therefore, the court ordered the State to compensate Pinewood $17,500 for the reasonable cost of repermitting and $9000 for the reduced value of the lots.

Pinewood's appeal focuses on several of the trial court's rulings on damages.

## I.

In a property condemnation proceeding, a land owner can recover for (1) the value of the most reasonable use of the property or right in the property, (2) the value of the business on the property, and (3) the direct and proximate decrease in the value of the remaining property or right in the property and the business on the property. 19 V.S.A. § 501(2). The value of the most reasonable use of the property is the market value of the land's highest and best use as of the date of the condemnation. *Raymond v. Chittenden County Circumferential Highway*, 158 Vt. 100, 103-04, 604 A.2d 1281, 1284 (1992). This requirement presents the trial court with a factual issue that is "at best a matter of opinion." *Green Mountain Marble Co. v. State Highway Bd.*, 130 Vt. 455, 464, 296 A.2d 198, 204 (1972). We will not set aside a trial court's land value findings unless, taking the evidence in the light most favorable to the prevailing party and excluding the effects of modifying evidence, those findings are clearly erroneous. *Id.* at 457, 296 A.2d at 200.

■ First, plaintiff contends that the trial court clearly erred in failing to accept what it terms the estimated "retail value" of the land, or the value that plaintiff expected to place on the lots if condemnation had not occurred and its development plans had proceeded. Plaintiff's expert valued each lot at $65,000, citing a comparable development, Lang Farm, which sold lots for that price. The trial court, in its discretion, rejected $65,000 per lot as too high, noting that Lang Farm "enjoyed more utilities" than Pinewood and could be sold to purchasers for immediate construction. See *Green Mountain Marble Co.*, 130 Vt. at 464, 296 A.2d at 204 (noting that opinion testimony is "not of controlling effect," and that "an expert's opinion is of no greater probative value than the soundness of his reasons"). Plaintiff was entitled to the value of the land on the date of taking, not what it expected to receive when the land was cleared and the infrastructure completed.

■ Second, plaintiff claims that a uniform $30,000 per lot award proves that the trial court failed to differentiate among the various lots according to the extent of the improvements on each. We find that differentiation to be unnecessary. Both experts expressed their land valuation on a uniform lot basis. To reach the ultimate per lot figure, the court explained that it increased the State's estimate to reflect Pinewood's preparation for construction as of the date of taking. Since the court considered the improvement stage of the lots in its compensation decision, we find no error in this finding.

■ Finally, plaintiff contends that the court erroneously calculated the number of condemned lots. Prior to the condemnation, Pinewood indisputably possessed eighteen permitted lots. After the taking, Pinewood asserts that it retained only seven permitted lots, thereby losing eleven in total. The State's appraiser, however, testified that by combining portions of the remainder into three building lots, Pinewood would lose only ten lots. As a general rule, mitigation applies to condemnation proceedings. 4A J. Sackman, Nichols on Eminent Domain § 14A.04[1] (rev. 3d ed. 1994). The court agreed with the State's position that Pinewood, as an experienced developer, could salvage the remaining portions to reduce its loss. Acknowledging that the reconfigured lots would require repermitting, the court included the reasonable cost for permitting among the severance damages. The evidence supports the trial court's conclusion; we find no error.

## II.

Next, we direct our attention to business loss. Though many states view injury to or destruction of a business upon lands taken by eminent domain as too uncertain, remote and speculative to be compensable, *Penna v. State Highway Bd.*, 122 Vt. 290, 292, 170 A.2d 630, 632 (1961), Vermont specifically identifies business loss as a reimbursable item of damage in a condemnation proceeding. 19 V.S.A. § 501(2). Business loss is not unlimited, however, and this Court has adopted standards to minimize uncertainty and speculation.

First, we require the property owner to have a "'fixed and established business.'" *Raymond*, 158 Vt. at 105, 604 A.2d at 1284 (quoting *Sharp v. Transportation Bd.*, 141 Vt. 480, 486, 451 A.2d 1074, 1076 (1982)). Characteristics of a fixed and established business include current use, current accessibility, and an identifiable market for the business's products. See *Green Mountain Marble Co.*, 130 Vt. at 462, 296 A.2d at 203 (finding that no business existed based on lack of current use, inaccessibility, and absence of market demand). Mere plans, however, rest on conjecture and therefore do not rise to the level of a fixed and established business for the purpose of business loss compensation. See *Raymond*, 158 Vt. at 105, 604 A.2d at 1284 (holding preliminary development plans for subdivision not sufficient to constitute a fixed and established business developing land). Here, Pinewood had a fixed and established business selling lots and constructing homes. In particular, Pinewood's continuous development of the Pinewood Manor residential area since the early 1960s and the strong market for its lots and custom homes support this conclusion.

But Pinewood still had to demonstrate that the land award did not already compensate it for business losses. *Sharp*, 141 Vt. at 486, 451 A.2d at 1076. In *Sharp*, we adopted a method of computing business loss. *Id.* at 487, 451 A.2d at 1077. The trial court takes the value of the business on the condemned land as a whole, and from that number, subtracts the value of the land's highest and best use. The remainder, if any, represents the property owner's business loss which has not "necessarily been compensated" in the valuation of the land. *In re Condemnation Award to 89-2 Realty*, 152 Vt. 426, 429, 566 A.2d 979, 981 (1989). A property owner may not recover for business loss beyond the extent of that remainder. *Sharp*, 141 Vt. at 488, 451 A.2d at 1077.

■■ The property owner may offer evidence of the value of the business in a number of ways. Since no one single method of valuation is appropriate for all circumstances, we see no reason to dictate the specific manner of appraisal. Rather, we recognize the trial court's duty to evaluate the appropriateness of the appraisal approach offered through expert testimony. *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 505, 367 A.2d 1363, 1368 (1976). The factors enumerated in *Sharp*, however, should receive consideration:

> (a) the contribution made by the land to the business, (b) the personal property used by the business, (c) the going concern value of the business, (d) the increased value derived from the fact that tangible assets are combined in a single unit and are already functioning in the marketplace, and (e) where appropriate, goodwill.

*Sharp*, 141 Vt. at 491, 451 A.2d at 1079.

None of the considerations outlined above include lost profits, which was the basis of the trial court's decision below. We decline to include lost profits among the elements of the business loss equation for two reasons. First, in this context, lost profits depend on speculation and conjecture. None of the houses on which the trial court awarded lost profits were even under contract. If they had been, the contracts would have been an asset of the corporation, capable of specific valuation, that was lost as a result of the condemnation. The lost profit would have been reflected in the valuation of the business before and after condemnation. Instead, Pinewood's profits were merely speculative. The trial court seems to have recognized the speculative nature of granting the property owner the retail value of the land before the land was prepared for retail sale. Likewise, the court should have recognized that the profits that Pinewood someday hoped to realize for houses that it had neither sold nor built did not represent the value of the business thereon at the date of taking.

The second reason we reject lost profits as an appropriate measure of damages in this case is that it may result in duplicate compensation. The court estimated the lost profits based on the prior profitability of the corporation. Prior profitability already influences the business loss calculation because it affects the value of the business as a going concern and the value of its goodwill. Because Pinewood has already received the fair market value of the lots, the only extra compensation to which it might be entitled would come from these

more negligible factors that are included in the valuation of the business as a whole.*

The burden of proof on business loss rests with the property owner. *Gibson Estate v. State Highway Bd.*, 128 Vt. 47, 51, 258 A.2d 810, 812-13 (1969). Pinewood failed to submit evidence on the value of the business on the condemned land as a whole. It offered evidence only of lost profits, which could not carry its burden on this issue.

## III.

Pinewood also appeals two elements of the severance damage award. In a condemnation proceeding, the State must compensate the land owner for severance damages — the remainder's direct and proximate decrease in value, including the business thereon. 19 V.S.A. § 501(2). The difference between the market value of the remaining property immediately before and after the taking properly measures this decrease. *Condemnation Award to 89-2 Realty*, 152 Vt. at 431, 566 A.2d at 982. These findings stand unless clearly erroneous. V.R.C.P. 52(a); see *Jarvis v. Gillespie*, 155 Vt. 633, 637, 587 A.2d 981, 984 (1991) (holding findings not clearly erroneous if any reasonable and credible evidence to support them).

Pinewood first challenges the trial court's decision to base the severance damage award on the State's expert appraiser's

---

*Although we have examined the practices of other jurisdictions on recovery of business losses and lost profits, the decisions do not aid our analysis. We found that several jurisdictions allow compensation for the loss of the going concern value or goodwill in certain instances, but do not provide for lost profits. See Cal. Civ. Proc. Code § 1263.510 (West 1982) (adopting § 1016 of Uniform Eminent Domain Code); Wyo. Stat. § 1-26-713 (1988) (adopting § 1016 of Uniform Eminent Domain Code); *City of Detroit v. Michael's Prescriptions*, 373 N.W.2d 219, 224-25 (Mich. Ct. App. 1985) (stating recovery allowable where business derives success from location not easily duplicated or where relocation foreclosed for reasons relating to entire condemnation); *City of Minneapolis v. Schutt*, 256 N.W.2d 260, 261-62 (Minn. 1977) (holding that compensation for goodwill or going concern value only awarded where interest holder able to show going concern value will be destroyed, or business cannot relocate as practical matter).

Those jurisdictions that do recognize lost profits as a compensable element of business loss damage limit such awards to particular circumstances not relevant here. See *State v. Hammer*, 550 P.2d 820, 823 (Alaska 1976) (holding temporary loss of profits during relocation recoverable); *Metropolitan Atlanta Rapid Transit Auth. v. Ply-Marts, Inc.*, 241 S.E.2d 599, 601-02 (Ga. Ct. App. 1978) (requiring condemnee to prove condemned property has some unique or peculiar relationship to business and to mitigate damages before loss of profits considered); *Department of Transp. & Dev. v. Exxon Corp.*, 430 So. 2d 1191, 1195 (La. Ct. App. 1983) (holding lessee operating gas station entitled to lost profits for duration of lease).

estimate. Pinewood claims it will have to lower the price of five lots by $15,000 each once the State builds the circumferential highway. The State introduced contrary evidence suggesting that only three lots would lose value, in the amount of ten percent each, due to their proximity to the highway. The trial court was persuaded by the State's position. As the judge of the credibility of witnesses, *In re Nash*, 158 Vt. 458, 462, 614 A.2d 367, 369 (1991), the trial court must often choose among various expert opinions. We find that the trial court did not abuse its discretion in placing greater weight on the testimony of the State's expert.

██ Next, Pinewood asserts that the trial court committed reversible error in failing to provide compensation for a building lot on which Pinewood constructed a second access road. Prior to the land condemnation, Pinewood had planned to use neighboring land for the second access to its development. Pinewood had not acquired an easement or any other legal right to use the neighboring land. When the State simultaneously took that land and Pinewood's property, Pinewood had to use one of its own lots for the second access. The court, in noting that the State's condemnation of Pinewood's land did not directly cause the loss of the lot used for the second access, correctly concluded that the State was not liable. See *LaGue v. State*, 128 Vt. 212, 215, 260 A.2d 387, 389 (1969) (holding State not liable for inchoate rights of access over property condemned before easements established).

## IV.

██ Finally, Pinewood requests that the interest on the judgment be recalculated through the date of satisfaction. The State prepared a draft judgment order, pursuant to V.R.C.P. 58, which mistakenly limited interest to December 10, 1993, even though judgment was not entered until January 24, 1994. Pinewood, therefore, seeks the prejudgment interest for the period between December 10, 1993 and the date of the judgment entry. The State, however, contends that Pinewood waived its right to appeal this issue because it did not file "any objections to the judgment proposed within five days of service upon them." V.R.C.P. 58. We disagree. By filing a V.R.C.P. 59(e) motion to amend, Pinewood sufficiently apprised the trial court of its claim of error, and adequately preserved the issue for our review.

Liquidated or readily ascertainable damages include prejudgment interest as a matter of right. *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294,

304, 629 A.2d 325, 331 (1993); V.R.C.P. 54(a). Rule 54(a) entitles Pinewood to "all interest accrued on that amount up to and including the date of entry of judgment." V.R.C.P. 54(a). Therefore, Pinewood may recover for prejudgment interest up to January 24, 1994.

Furthermore, under Vermont law, a party may recover postjudgment interest for the period between the date of entry and satisfaction. V.R.C.P. 69; V.R.A.P. 37. A motion to amend automatically stays a judgment. See Reporter's Notes, V.R.C.P. 59 (noting that under Rule 62(a) judgment automatically stayed during extension of time for appeal); V.R.C.P. 62(a). In situations, as here, where execution is stayed and judgment is affirmed, interest "shall be payable from the date the judgment was entered." See V.R.A.P. 37; Reporter's Notes, V.R.A.P. 37 (stating first sentence of rule consistent with 12 V.S.A. § 2431, now superseded); *In re Waterhouse*, 125 Vt. 202, 203, 212 A.2d 696, 697 (1965) (relying on 12 V.S.A. § 2431 to conclude that V.R.A.P. 37 applies when execution stayed).

Since the State paid the judgment award on February 15, 1994, including interest up to December 10, 1993, it owes Pinewood the interest in total on the judgment, absent business loss, which accrued between December 10, 1993 and February 15, 1994.

*Business loss award reversed; interest award revised to include that accrued from December 10, 1993 to February 15, 1994; remaining issues affirmed. Cause remanded for recomputation of award and entry of judgment.*