## Samuel and Annette Mazza v. Agency of Transportation

[716 A.2d 817]

No. 97-130

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Martin, Supr. J.,**
**Specially Assigned**

Opinion Filed June 19, 1998

*Thomas P. Aicher* of *David L. Cleary Associates, P.C.*, Rutland, for
Plaintiffs-Appellees.

*William H. Sorrell*, Attorney General, and *Scott A. Whitted*,
Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Dooley, J.** The State of Vermont appeals from a Chittenden
Superior Court condemnation award in favor of Samuel Mazza
arguing that the amount awarded for business loss was improper
because the business was incorporated and, therefore, was not owned
by the landowner. The landowner has cross-appealed claiming: (1) the

amount awarded for the land was inadequate as a matter of law; (2) the amount awarded for business loss was also inadequate as a matter of law; and (3) the jury should have awarded additional damages for relocation of an irrigation line. We affirm.

The land in question, approximately 7.3 acres, lies in the proposed path of the Chittenden County Circumferential Highway, and about half of it, 3.9 acres, is used to grow pumpkins as part of a truck farm operation. In March 1993, the Chittenden Superior Court found necessity for the Vermont Agency of Transportation to take the land by eminent domain from its owners, Samuel and Annette Mazza. At the time, the landowners conducted the farm operations on the property as a sole proprietorship.

Shortly thereafter, in May 1993, landowners formed a family corporation known as S. Mazza Farmstand and Greenhouses, Inc. to carry on their farm business. The corporation was established for estate and tax planning purposes. Title to the land remained in the name of the individuals, but the land was leased to the corporation pursuant to a written lease.

Following a hearing, the Vermont Transportation Board on September 9, 1994 set the value of the condemned property at $60,100, and did not include in that amount any business loss. Landowners appealed to the Chittenden Superior Court. Annette Mazza died before the trial, leaving Samuel Mazza as the sole landowner.

The main issue at the November 1996 trial was whether landowners were entitled to business loss damages. The State argued they were not because the business was being conducted by a corporation which did not own the land, and because the value of a farming business is necessarily included in the value of the land. Landowner argued that the nature of the truck garden operation was such that the value of the land did not reflect the value of the business. Landowner also argued that he and his wife owned the business at the time of the taking, which he claimed was the date of the necessity determination, and, in any event, the corporate form of ownership should not be determinative in a family business.

The court submitted the issue of business loss to the jury, which came back with a verdict of $150,000 — $140,720 for business loss, $5,850 for the tillable land, and $3,430 for the nontillable land. The court denied landowner's motion for a judgment as a matter of law which argued that the undisputed evidence required the jury to set higher values on the land and the business.

On appeal, the State argues that the court erred in submitting the issue of business loss to the jury because the landowner did not own

the business. The State has not appealed the court's decision that the value of the farm business is not included in the value of the land, and we do not consider that question.

The briefing on this issue has centered on whether landowners owned the business on the date of taking, whether the corporation's leasehold interest was sufficient to support an award to it, and whether the court could pierce the corporate form for a family business. We conclude that we need not reach these arguments because we do not believe the applicable statutes require that the landowner own the business as a sole proprietorship in order to recover business loss.

"Vermont is one of the few states to recognize business loss as an item of damage in a condemnation proceeding." *Raymond v. Chittenden County Circumferential Highway*, 158 Vt. 100, 105, 604 A.2d 1281, 1284 (1992). The authorization for this item of damages is contained in 19 V.S.A. § 501(2), which provides, in part:

> Damages resulting from the taking or use of property under the provisions of this chapter shall be the value for the most reasonable use of the property or right in the property, and of the business on the property, and the direct and proximate decrease in the value of the remaining property or right in the property and the business on the property.

Although the statute does not state that the landowner must own the business outright in order to recover business losses, the State argues that this requirement must be implied because the statutes would not allow a business-owner who is not a landowner to participate in a condemnation proceeding. See 19 V.S.A. § 501(3) (person interested in lands must have "a legal interest of record"); *id.* 511 (Cum. Supp. 1997) ("person having an interest in the land" may participate in hearing to determine compensation).

For three major reasons, we reject the State's argument. First, the condemnation proceeding in the superior court is essentially an in rem action with respect to the property. See *City of Winooski v. State Highway Bd.*, 124 Vt. 496, 498, 207 A.2d 255, 257 (1965). Because of the nature of the action, we held in *American Oil Co. v. State Highway Bd.*, 122 Vt. 496, 504, 177 A.2d 358, 364 (1962):

> [W]e take the view that the legislative intention is correctly interpreted as contemplating a single proceeding against the property in the nature of an *in rem* action transferring to the highway board the required right in the property in

return for money damages representing its fair equivalent, passing in the first instance to the person having the legal capacity to convey the interest acquired.

*American Oil Co.* is instructive on this point. The land involved was used for a filling station. The gasoline company as lessee, the filling station operator as sublessee, and the mortgagee all claimed an interest in the property for which they wanted damages. This Court denied their claims, allowing the State to bring one proceeding and make one payment to the landowner. As reflected in the statement that the payment passed "in the first instance" to the landowner, the landowner might be obligated to pay over part of the damages to others. *Id.*

Because of our view that the condemnation proceeding operates in rem and that the State is required to make only one payment, there is no impediment to including an amount for business loss even if the business is not owned by the landowner. Of course, a damage award made "in the first instance" to the landowner may have to be shared with the owner of the business which suffered losses. The State need not be concerned about how that apportionment is made.

Second, the State is relying on a distinction without a meaningful difference. The Legislature has determined that it will compensate for business losses in condemnation proceedings. See *Record v. State Highway Bd.*, 121 Vt. 230, 237, 154 A.2d 475, 480 (1959) (Legislature responded to inequity created where business received no compensation although it was "invaded" by the taking "and the yield of the business [was] lessened or destroyed as a result of the taking of the land upon which the business is situated"). In implementing this policy, the State has suggested no reason for discriminating between closely-held family businesses owned directly by the landowner and those in corporate ownership, or even for discriminating against corporations generally if they do not own the condemned land.

On the other hand, the rule the State seeks to impose is an unnecessary trap for the unwary. In order to recover for its loss in a condemnation proceeding, a business must be tied to the land:

> It is only to the extent that a business is taken by the appropriation of the land on which it is situated that the legislature meant that compensation be paid. A business may be inextricably related and connected with the land where it is located so that an appropriation of the land means an appropriation of the business.

*Id.* This requirement is most likely to be met where there is overlapping ownership of the land and business to ensure the availability of the real property for business purposes. Thus, the main effect of the State's rule is to deny business loss compensation to some closely-held businesses that chose a form of ownership of the real property and business that is otherwise most advantageous for taxation or other purposes. We see no legitimate state purpose behind this result. See *Rhodes v. Town of Georgia,* 166 Vt. 153, 157, 688 A.2d 1309, 1311 (1997) (statutes should not be construed to produce "absurd or illogical consequences").

Third, and finally, the State's position is not consistent with the language of the controlling statutes. The Legislature has specifically provided that compensable damages include "the value . . . of the business on the property" without requiring that the business be in the same ownership as the land to be condemned. See 19 V.S.A. § 501(2); see also *In re Lunde,* 166 Vt. 167, 169, 688 A.2d 1312, 1313-14 (1997) (statutes should be construed in accordance with the plain meaning of the words chosen). As we held in *American Oil Co.,* the transportation board's obligation to pay "each person from whom land or rights are taken," 19 V.S.A. § 512(a), contemplates a payment to the landowner, again irrespective of the ownership of the business. See *American Oil Co.,* 122 Vt. at 504, 177 A.2d at 363. At best, the State has shown that the corporation may not have the full panoply of procedural rights, which are available to the landowner, but a limit on procedural rights does not mean that the State is excused from paying for all business losses caused by its involuntary taking of the land.

■ For the reasons stated, the superior court was correct in submitting the question of business loss to the jury despite the corporate ownership of the business.

The landowner's first cross-appeal claim is that the jury erred as a matter of law when it awarded only $1,500 per acre for the tillable land and $1,000 per acre for the nontillable land. The landowner argues that all testimony, including that from the State's own expert, set the value of all the land at $3,000 per acre, and, thus, the jury was not free to ignore the undisputed evidence.

Normally, land taken by eminent domain is valued at its highest and best use, termed in the statute "the most reasonable use of the property." 19 V.S.A. § 501(2); see *Pinewood Manor, Inc. v. Vermont Agency of Transp.,* 164 Vt. 312, 315, 668 A.2d 653, 656 (1995). In this case, expert witnesses for both sides found that the highest and best

use of the property was for residential development, and based their per acre value on this use.

When there is a claim for business loss, however, the business use and the use for which the property is developed must be the same. See *Sharp v. Transportation Bd.*, 141 Vt. 480, 491, 451 A.2d 1074, 1079 (1982). *Sharp* involved the exact situation present here, a claim for business loss of a farm and a claim for loss of the land used in the farm, but at a value for housing development. We held "plaintiffs can use the land either for their dairy operations or for residential building lots . . . they cannot be compensated for both actual use and highest and best use." *Id.* at 493, 451 A.2d at 1080.

 The court in this case charged the jury in accordance with *Sharp*. As a result, the jury was required to value the property for farm use once it decided to award business loss.* The State's appraiser testified that the land was worth between $1,000 per acre and $1,500 per acre when valued for farm use. The jury's verdict was supported by this evidence, and, thus, must stand.

For the first time on appeal, landowner suggests that nontillable land, which is not directly involved in the farming operation, and the value of that land, must be increased to $3,000 per acre. We cannot find that this argument was raised in the superior court. See *Rossetti v. Chittenden County Transp. Auth.*, 165 Vt. 61, 68, 674 A.2d 1284, 1289 (1996) (objection ground not raised below is waived and may not be raised for the first time on appeal). In any event, the per acre value assigned by the appraisers was for the entire 7.3 acres and was not necessarily applicable to a portion. Indeed, the exact characteristics that made it nontillable may have reduced its value for residential

---

* In determining property condemnation compensation, *Sharp* allows compensation for business loss if the value of the business as a whole exceeds the value of the land at its highest and best use. See 141 Vt. at 487, 451 A.2d at 1077. In making this determination, the jury is required to: (1) value the land at its highest and best use; (2) arrive at a value for the business as a whole; and (3) then derive a net value of the business by subtracting the value of the land from the value of the business as a whole. See *id.* The landowner is then awarded the sum of the value of the land plus the net value of the business, if any exists. Here, the jury apparently valued the land as farm land and never determined the property's highest and best use. Nevertheless, because the value of the business far exceeded the highest and best use of the land, any errors made solely in the value of the land are harmless because they are offset by equivalent errors in the net value of the business. Thus, if the value of the land in this case were increased to $3,000 an acre, or $21,990, the jury award for the land taken would be increased by $12,710. The award for business loss would, however, be reduced by $12,710. The total award would remain at $150,000.

118

development. We cannot say that the jury was required, as a matter of law, to set the value of any of the land at $3,000 per acre.

Second, landowner argues that the undisputed evidence required the jury to set the value of business loss at a minimum of $174,800, the amount testified to by his appraiser. This amount was undisputed, in landowner's view, because the State claimed that landowner was not entitled to business loss damages, and, as a result, offered no alternative value for such loss.

■ The short answer to landowner's claim is that the jury is not bound by a value provided by an expert even if there is not a competing value in evidence. Valuation of real property or a business is "at best a matter of opinion." *Pinewood Manor, Inc.*, 164 Vt. at 315, 668 A.2d at 656. Thus, "opinion testimony does not establish any material fact as a matter of law and is not of controlling effect." *Green Mountain Marble Co. v. State Highway Bd.*, 130 Vt. 455, 464, 296 A.2d 198, 204 (1972). Here, the jury apparently accepted the land-owner's appraiser's testimony in part, but not fully. It acted within its power in doing so.

Finally, landowner argues that the court erred in refusing to allow the jury to award him the cost of a new irrigation line he was required to install on the remaining farm land. The superior court refused to submit this claim to the jury because landowner provided no evidence on how the expense related to the fair market value of the remaining land or business. The statute authorizes as an element of damage "the direct and proximate decrease in the value of the remaining property . . . and the business on the property." 19 V.S.A. § 501(2). As we held in *Allen v. Burlington Housing Authority*, 129 Vt. 8, 13, 270 A.2d 588, 592 (1970), the cost of improvements is not necessarily reflected in fair market value. See also *Demers v. City of Montpelier*, 120 Vt. 380, 390, 141 A.2d 676, 683 (1958) (although cost of construction was properly before the court, "the cost could not fix the compensation" because cost and value "are not the same in fact or law"). Similarly, the amount a landowner expends to maintain the usefulness of remaining lands is not necessarily equal to the reduction in fair market value from the taking. It was incumbent on the landowner to relate the expenditure to fair market value. See 4A J. Sackman, Nichols on Eminent Domain § 14A.04[2][a], at 14A-103 (3d ed. 1997). He failed to do so.

■ Landowner argues, however, that it would have been impossible to calculate the effect of relocating the irrigation line on fair market value, and, in any event, the effect would have been greater

than the cost of relocation. The evidence must be sufficient to allow an estimate of fair market value "with reasonable certainty" and to avoid speculation. *In re Bolduc*, 121 Vt. 20, 24, 146 A.2d 240, 242 (1958). We believe the burden was capable of being met. Neither can we conclude that the effect of the taking on the fair market value of the remaining land and business was necessarily greater than the cost of relocating the irrigation line.

*Affirmed.*